### OCHILTREE *v.* THE RAILROAD COMPANY.

1. Where the constitution of a State makes each stockholder in a corporation "individually liable for its debts, over and above the stock owned by him," in a further sum at least equal in amount to such stock, and the corporation incurs debts, and is then authorized to obtain subscriptions for new stock, but does not now obtain them, and the constitution of the State is afterwards amended and declares that "in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him," and the corporation then, for the first time, issues the new stock, the holders of such new stock are not personally liable under the first constitution.
2. The amended constitution does not impair the obligation of the contract between the corporation and its debtor made under the first constitution.

ERROR to the Supreme Court of Missouri; the case being thus:

A constitution of Missouri adopted in 1865, under a provision relating to the debts due by corporations having stockholders, thus enacted:

"In all cases each stockholder shall be individually liable

---

* Sherman *v.* Blackman, 24 Illinois, 347; Hemenway *v.* Cropsey, 37 Id. 857.

over and above the stock by him or her owned, and any amount unpaid thereon in a further sum at least equal in amount to such stock."

This clause of the constitution of 1865, commonly called "the double liability clause," being in force (with a statute also prescribing a method of giving effect to it), the Alexandria and Nebraska City Railroad Company—a Missouri company, with a paid-up capital of $2,000,000—in May, 1869, became indebted to one Ochiltree. That company soon afterwards incorporated itself, as railroad companies are allowed in Missouri to do, with another railroad company—the Iowa Southern—this last having a paid-up capital of $1,500,000; the two companies forming a third one under a new name, and this new one being, by the terms of consolidation, bound to pay the debts of the old ones. The capital of the new company was to consist of $13,000,000; of which the conjoint $3,500,000 of the two old companies made the part paid in; and there remained, of course, $9,500,000 of stock in the new company to be yet subscribed for.

In this condition of things, the State of Missouri, A.D. 1870, amended its constitution. By the amended constitution "the double liability clause was abrogated," and the following exactly opposite provision substituted:

"Dues from private corporations shall be secured by such means as may be prescribed by law; but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him or her."

*This* new provision being in force, a railroad company wholly independent of the others, to wit, the Iowa Railroad Contracting Company, subscribed and paid for eight thousand nine hundred and sixty shares, of the value of $100; in other words, subscribed and paid for stock to the amount of $896,000.

In this state of things, Ochiltree's debt not being paid, on execution issued, by any one of the companies, he sued the Iowa Railroad Contracting Company, in one of the State

courts of Missouri, as a stockholder in the new company, his suit being founded on the double liability clause of the constitution of 1865,·and his assumption being that though the Iowa Railroad Contracting Company had subscribed for its stock after the adoption of the constitution of 1870, yet as his debt accrued *before* its adoption and while the constitution of 1865 was in force, he could proceed personally against *all* stockholders, and that "the single liability" provision in the constitution of 1870 was null and void as to his rights in the case, because, in depriving him of his remedy against stockholders under the law in force when his debts were contracted and the consolidated company became liable therefor, the said provision impaired the obligation of the company's contract with him within the meaning of the Constitution of the United States.

The court in which he brought his suit was not of this opinion and gave judgment against him, and this judgment being affirmed by the Supreme Court of Missouri he brought the case here.

*Mr. G. W. McCrary, for the plaintiff in error,* cited numerous cases in this court, but relied specially on *Hawthorne* v. *Calef.*[*] He cited also the cases of *McLaren* v. *Franciscus*[†] and *Miller* v. *Republic Insurance Company.*[‡]

*Mr. T. T. Gantt, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

It is quite apparent that considerations of public policy induced the adoption of the double liability clause in the constitution of 1865, and equally apparent that, in the minds of the framers of the amendment of 1870, this provision had operated injuriously to the interests of the State, and that sound policy dictated its repeal. It is not difficult to see, with this provision in force, that great public improvements, in some of the States of the Union at least, could not be suc-

---

* 2 Wallace, 10.          † 43 Missouri, 452.          ‡ 50 Id. 55.

cessfully carried on. Instead of inviting capital it would repel it. There are few persons who would consent to take stock in such enterprises, if subject to the double liability provision. Although willing to risk the loss of their stock, they would be unwilling to involve their estates beyond it. Especially would this be so if they were invited to take part in the completion of works greatly in debt, and which had languished for years. It is, therefore, important to determine, not only for this case, but all others similarly situated, whether the change of policy on this subject, as manifested by the change in the organic law, is effectual to accomplish the desired object.

The Supreme Court of the State having construed the amendment of 1870 so as to relieve stockholders in corporations, subscribing after it went into operation, from the effects of the former constitution, as to debts contracted prior to the amendment, the only question at issue here is, whether the amendment, thus interpreted, has the effect of impairing the obligation of the plaintiff's contract within the meaning of the Constitution of the United States.

It would serve no useful purpose to restate the views of this court on this general subject; nor to review the cases, which are neither few nor unimportant. It is enough to say that the law of the contract forms its obligation, and that legislation, which materially impairs the remedy, is void.

The law of the contract in this case undoubtedly gave the plaintiff the right to subject existing stockholders in the corporation, with whom the debt was contracted, to the double liability provision. This provision could be invoked so soon as the assets of the corporation were exhausted. The plaintiff trusted this corporation and the members composing it at the time the contract was made. It cannot be said that he gave credit beyond this, for what right had he to assume that other stock would be taken? It may be that he expected this would be done, and that thereby his security would be increased; but the obligation of a contract within the meaning of the Constitution is a valid subsisting obligation, not a contingent or speculative one. It was no part of

the obligation of the contract that future stock should be taken. The value of it would be enhanced if this were done, but the obligation of it would be the same whether the stock were taken or not. If taken, it subjected the holder to the personal liability imposed by the law at the time of the subscription, and to the extent of this additional responsibility the plaintiff is benefited. But suppose no additional stock were taken, the plaintiff has all that he trusted, and has no right to complain that his contract is not as valuable as he thought it would be. If, then, the credit was given to the corporation, and the personal liability of the members composing it at the date of the contract, how does the repeal of the double liability clause impair the plaintiff's contract? It is true, while unrepealed, he had the opportunity to accumulate securities for the payment of his debt, but is this opportunity to be continued after experience has proved that the policy on which it rested was injudicious and should be abandoned? Such a doctrine would tie up legislation, in order that the speculative expectancies of creditors may be protected. It was the object of the national Constitution to protect rights, and not mere incidental advantages which may affect the contract indirectly. The incident of individual liability attached to and formed a part of the contract as long as it lasted, but its repeal did not deprive the plaintiff of any of the rights secured to him when the contract was made. They still exist, and the remedy to enforce them remains the same. If the corporation itself cannot pay, the members who composed it at the time of the repeal are unaffected by it, and there is nothing in the way of subjecting them to the double liability provision. Instead of the plaintiff being injured by the repeal, he is benefited by it, for it cannot be supposed that the defendant would have taken stock with the burden imposed by the old law, and the subscription made by it increased the capacity of the company to pay its debts very largely, as it is agreed that it owns eight thousand nine hundred and sixty shares of stock, each share being for $100. This stock was paid for and risked in the general enterprise, and, like other assets, liable for the

debts of the company; but the plaintiff seeks to place upon the defendant a liability beyond this, which it cannot be believed it meant to assume, as the law did not impose the liability upon it when the stock was taken.

The plaintiff contracted with the Alexandria and Nebraska company, authorized to issue two millions of stock. In the absence of any evidence on the point, it is fair to presume the stock was absorbed when the contract was made. This corporation he trusted, and the persons who held its stock were undoubtedly liable to him in case he could not get his debt out of the company. He not only holds this security, but in addition to it the assets of the Iowa Southern Company, and the liability of the holders of one and a half millions of stock in it. Beside this he has the obligation of the consolidated company to pay his debt. It is difficult to see how these things have tended to impair his contract or lessen its value. But he seeks to increase his security by embracing the stockholders of the consolidated company, who were not parties to the contract to pay his debt, but who subscribed after the amended liability law went into operation. This he cannot do. His remedy under the law as it existed at the date of his contract is not impaired because the consolidated company increased its stock, as it was authorized to do, and was enabled to sell it by reason of the withdrawal of the burden of personal liability.

It is claimed by the plaintiff that the law under which his debt was contracted made all who were stockholders on the issue of the execution liable to contribute personally to the payment of his debt, and two cases in Missouri are cited to support this proposition.* These cases arose before the repeal of the law, and were controversies between the holders of stock when the debt was contracted and the actual holders of it at the date of the execution. It was conceded that one class or the other were liable; and the court decided that the liability attached to the stock, and followed it in the hands

---

* McLaren *v.* Franciscus, 43 Missouri, 452; Miller *v.* Republic Insurance Co., 50 Id. 50.

of the assignee, and that, therefore, those stockholders only were liable who were such at the date of the execution. This is the full force of the decisions referred to, and they give to the plaintiff the right to seek his remedy against any one who held stock subject to the incident of individual liability, at the date of the execution against the corporation.

But as the incident of individual liability has been repealed, and neither the law nor his contract makes the defendant liable for the debts of the company beyond the amount of its stock, it follows that the decisions of the Supreme Court of Missouri on the point invoked are not applicable.

And so, doubtless, thought that court in its decision of this case, as the point is not noticed in the opinion.

JUDGMENT AFFIRMED.