## BLACKBURN v. IRVINE.

### (Circuit Court of Appeals, Third Circuit. April 23, 1913.)

### No. 1,647.

**1. CORPORATIONS (§ 243*)—INSOLVENCY—STATUTORY LIABILITY OF STOCKHOLDERS.**

A person in whose name stock of a corporation stands on its books is liable for an assessment under a double liability statute of the state on its insolvency, even though the equitable ownership is in another against whom he may have a right to recover over, and, where under the statute the equitable owner is also liable, separate actions may be maintained against each.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 943, 944, 946–950, 952–959, 974, 975, 979; Dec. Dig. § 243.*

Liability of transferrors and transferees of corporate stock for assessments, see note to Campbell v. American Alkili Co., 61 C. C. A. 322.]

**2. CONSTITUTIONAL LAW (§ 105*)—VESTED RIGHTS—RIGHT OF ACTION—LIABILITY OF STOCKHOLDERS.**

A statute cannot relieve a stockholder of an insolvent corporation from his double liability in favor of creditors whose rights have become vested under the Constitution or prior statutes of the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 228–235; Dec. Dig. § 105.*]

**3. CORPORATIONS (§ 263*)—STATUTORY LIABILITY OF STOCKHOLDERS—ACTION—JURISDICTION.**

A decree entered by an Ohio court under the state statute providing for the enforcement of the double liability of stockholders in insolvent corporations, as amended in 1900 (Rev. St. Ohio 1908, § 3260), making an assessment against stockholders and appointing a receiver with authority to collect the same, makes such receiver a quasi assignee and representative of the creditors, and as such he is vested with authority to maintain actions in his own name in foreign jurisdictions.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 831, 1065; Dec. Dig. § 263.*]

**4. LIMITATION OF ACTIONS (§ 58*)—ACTION TO ENFORCE DOUBLE LIABILITY OF STOCKHOLDERS—OHIO STATUTE.**

Where the insolvency of a corporation has been established by the appointment of a receiver for its property, limitation begins to run in favor of all stockholders against the double liability imposed by the statute from the appointment of the receiver, but on the commencement of the general creditors' suit provided for against the corporation and its stockholders, to which it is intended that all creditors and stockholders shall be made parties in order that the indebtedness of the corporation and the amount of the assessment necessary may be determined by the decree, the statute ceases to run as to all stockholders who are brought in, which in the case of nonresident stockholders may be through service by publication.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 324–328, 346, 347; Dec. Dig. § 58.*]

**5. LIMITATION OF ACTIONS (§ 6*)—STATUTES—RETROACTIVE OPERATION—LIABILITY OF STOCKHOLDERS.**

Act Ohio April 29, 1902 (95 Ohio Laws, p. 312), which provides that "an action upon the liability of stockholders can only be brought within

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

18 months after the debt or obligation shall become enforceable against stockholders," did not apply to pending proceedings.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 16–31; Dec. Dig. § 6.*]

6. LIMITATION OF ACTIONS (§ 58*)—ACTION TO ENFORCE DOUBLE LIABILITY OF CORPORATE STOCKHOLDERS.

Limitation does not begin to run against a suit brought in a foreign jurisdiction by a receiver appointed under the Ohio statute (Rev. St. 1908, § 3260) against a stockholder of an insolvent corporation to enforce his double liability until such liability has been precisely determined by the decree of the Ohio court, the assessment made, and there has been a default in its payment.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 324–328, 346, 347; Dec. Dig. § 58.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, District Judge.

Action at law by Ellsworth C. Irvine, receiver, against Julius H. Blackburn. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 198 Fed. 360.

Reed, Smith, Shaw & Beal, and Edwin W. Smith, all of Pittsburgh, Pa., and John G. Johnson, of Philadelphia, Pa. (L. A. Manchester, of Youngstown, Ohio, and L. H. Burnett, of Pittsburgh, Pa., of counsel), for plaintiff in error.

James R. Sterrett and Patterson, Sterrett & Acheson, all of Pittsburgh, Pa. (E. C. Irvine, of Columbus, Ohio, of counsel), for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. In this action at law Ellsworth C. Irvine, receiver of the Columbus, Sandusky & Hocking Railroad Company, is suing Julius H. Blackburn, the holder of the legal title to certain shares of the company's stock, to enforce the double liability that was imposed by the Constitution and statutes of Ohio during the period from 1851 to 1903. The facts being undisputed, each party asked for binding instructions, and the court directed a verdict for the plaintiff. Several legal questions, however, were raised below, and are raised again upon this writ of error. Since 1895 at least Blackburn has been a resident either of New York or of Pennsylvania; and, as he neither appeared nor was personally served with a summons in certain legal proceedings before the Ohio courts (hereinafter referred to), the receiver does not deny his right to set up now the defenses that are brought to our attention:

[1] 1. He insists that he is not, and has never been, the beneficial owner of the stock in question, but is merely the holder of the naked legal title; the equitable and real owner having always been Carnegie Bros. & Co., Limited, or their successors in interest. On the present writ of error, we assume this to be true; but it does not alter the fact that since 1896 he, and no one else, has appeared on the books of the

─────────
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

railroad company as an individual stockholder without qualifying or descriptive words (whatever the effect of such words upon his liability might have been); and we need not spend time in showing that he must respond primarily to the law's demand, although he may have a right hereafter to demand reimbursement from his cestui que trust. It may be true that under the statutes of Ohio his cestui que trust is also liable, and is liable pari passu with himself. But the fact, if such it be, is only one more example of what frequently occurs; for it often happens that each of two persons has made himself separately liable, and has been separately sued, upon the same writing or other legal obligation. Of course, only one satisfaction can be obtained; but in the present controversy that point has not yet been reached. In our opinion the receiver had a right to maintain a separate action against Blackburn and against Carnegie Bros. & Co.; and, if (as seems to be conceded) the suit that is still pending against Carnegie Bros. & Co. in the District Court rests ultimately upon the shares of stock standing in Blackburn's name, we can only say that we see no valid objection, either to that suit or to this.

[2] 2. It is also urged (but we think not very earnestly) that, as Blackburn indorsed the stock certificates in blank and delivered them to Carnegie Bros. & Co. soon after they were issued to him in 1896, he is relieved from liability by virtue of the act of 1902 (95 Laws of Ohio, 312). This act amends section 3258 of the Revised Statutes so as to read as follows:

"The stockholders of a corporation who are the holders of its shares at a time when its debts and liabilities are enforceable against them, shall be deemed and held liable, equally and ratably, and not one for another, in addition to their stock, in an amount equal to the stock by them so held, to the creditors of the corporation, to secure the payment of such debts and liabilities; and no stockholder who shall transfer his stock in good faith, and such transfer is made on the books of the company, or on the back of the certificate of stock properly witnessed or (and?) tendered for transfer on the books of the company prior to the time when such debts and liabilities are so enforceable, shall be held to pay any portion thereof."

Even if the final clause of this section (when properly construed) could have been intended to include a secret transaction without even a tender for transfer on the company's books, we need not discuss its validity; for the defendant cannot seriously contend that a law of the state could constitutionally take away or substantially impair the vested rights of corporate creditors. Hawthorn v. Calef, 69 U. S. (2 Wall.) 10, 17 L. Ed. 776; Ochiltree v. Railroad, 88 U. S. (21 Wall.) 252, 22 L. Ed. 546. And, as the double liability now sued upon became enforceable several years before the act of 1902 was passed, nothing more need be said upon the subject.

Before taking up the other questions, the facts out of which they arise must be stated in some detail. In 1897 the railroad company was insolvent. In June of that year the United States Circuit Court for the Eastern District of Ohio appointed a receiver, and not long afterwards sold all the company's property by appropriate proceedings. The scope of the federal suit and of the receivership was not proved with exactness at the trial of this action; but, from incidental al-

lusions here and there in the record, and from the very nature of the proceedings in the state court of common pleas, it is plain enough that the United States receiver was not at all interested in the various actions, petitions, etc., to which we are about to refer. These proceedings in the Ohio courts did not attempt, and had no tendency, to interfere with the receiver's possession and control of the property belonging to the insolvent company. They contain some loose and superfluous references to the corporate property, but the fact was that all the assets belonging to the company had been seized and administered by the federal court. The proceedings before the Ohio tribunals had a different object; they were begun and carried on by and in behalf of creditors against stockholders, and were only formally against the company; for their only object was to enforce the double liability arising under the law of the state, and this was not corporate property at all. The Constitution of 1851 (which in this particular was not changed until 1903) provided as follows:

"Dues from corporations shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but, in all cases, each stockholder shall be liable, over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum at least equal in amount to such stock." Article 13, § 3.

We need not refer to the earlier legislation on the subject. It is enough to begin with 1894 (91 Ohio Laws, p. 88), when the following method of enforcing the constitutional liability was provided by section 3260 of the Ohio statutes:

"A stockholder or creditor may enforce such liability by action jointly against all the holders or owners of stock, which action shall be for the benefit of all the creditors of the corporation, and against all persons liable as stockholders; and in such action there shall be found and determined the amount payable by each person liable as stockholder on all the indebtedness of the corporation, in which adjudication no costs shall be taxed to nor collected of any stockholder to an amount which, together with the amount to be paid on said indebtedness, will exceed the amount of the stock on which he is liable, provided, that in any such action the plaintiff may file in the court a sworn statement that a stockholder or * * * deceased stockholder have not been summoned, giving their residence if known, and that it is impracticable to secure service of summons upon such stockholders or such legal representatives of a stockholder, and remitting from the claims of the plaintiff or of other creditors consenting, so much as may be found payable by such stockholders not served with summons except those who may be insolvent or nonresident of the state, and judgment shall be rendered against the stockholders who have been served with summons, for the pro rata amount for which they would be liable if all solvent stockholders resident of the state were served with summons," etc.

It is conceded that this remedy was defective in several particulars; among other defects, it did not provide for summoning a nonresident stockholder by publication, or for bringing a suit against him in a foreign court, or for the appointment of a receiver. With the Ohio law in this condition, a creditor named Marriott obtained judgment in October, 1898, and in January, 1899, applied to the common pleas court of Franklin county for equitable relief under the section just quoted. As he was bound to do, he named the railroad company as the primary defendant; but he stated the suit to be "as well on behalf

of all of the creditors of the defendant as on his own behalf," and averred the recovery of his judgment, and that the company "was wholly insolvent and had been so for two years prior thereto, its property and all property rights then being in the hands of a receiver and not sufficient in value to satisfy its bonded indebtedness; and that it had no property, real or personal, whereon to levy out of which any part of said judgment could have been met on execution; and (that) the said defendant has not now, and has not had since the recovery of said judgment, any property of any description or character whatever from which said judgment could be met on execution." He then went on to aver the existence of numerous stockholders whose names and places of residence he did not know, nor the amount of stock held by any of them; and, after declaring that the stockholders were liable for the company's debts, he prayed that the company might be compelled to disclose the names of its stockholders and the amounts due from each, and that such stockholders when discovered might be made additional defendants. He prayed also:

"That the creditors of the said company and the amount due each may be ascertained in such manner as the court may direct, and that all stockholders in arrears for subscription for stock may be required to pay the balance due from them respectively; (and) that each stockholder be required to pay his ratable proportion of any deficit remaining after the application of the assets to said debts, of (to?) the amount of his stock."

A freight agent was served with the summons, and the company moved to quash the service. The motion was overruled, and thereafter the company seems to have taken no part in the proceedings, but, of course, as the service was held to be good, we must assume in this collateral action that the company had been duly brought into court. Nothing further appears to have been done until December, 1899, when another creditor, the Kinsey Company, filed a separate petition against the railroad company and thirty-four of its stockholders, averring again the complete insolvency of the corporation and the uselessness of obtaining a judgment (since it could not be satisfied by execution), and declaring that:

"It will be necessary for the payment of the creditors of said company that the stockholders thereof shall be assessed under the laws of the state of Ohio the full amount of their statutory liability."

The petition declared further that the suit was brought for the purpose of assessing "the individual and additional liability upon the shares of stock as above set forth" (meaning the shares held by the thirty-four stockholders), and also for the purpose of assessing the individual and additional liability of such other stockholders as might thereafter be made parties. The petition prayed that all the stockholders of the company might be ascertained and made parties; "that the total debts and liabilities of the said company, the amount of each, and the time when each of said debts was contracted, may be ascertained and determined; that the number of shares of stock held by each of said stockholders, and the time during which each of said stockholders respectively so owned and held such stock, may likewise

be ascertained and determined; and the amount of assessment necessary and proper to be made to satisfy the said debts and liabilities of said defendant company"; and that after the debts, the liabilities, the stockholders, and the assessments should be ascertained, a receiver might be appointed to collect the assessments and to make distribution among creditors. The summons in the Kinsey proceeding was served on the vice president and on the treasurer of the railroad company, but the company did not appear or answer. As the law of Ohio then stood, the nonresident stockholders could not be reached, even by publication, and their double'liability could not be enforced. But in April, 1900 (94 Ohio Laws, p. 359), section 3260 was amended and supplemented so as to read as follows:

"Sec. 3260. Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of a corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any common pleas court which possesses jurisdiction to enforce such liability.

"Sec. 3260a. The court shall proceed thereon, as in other cases, and, when necessary, shall cause an account to be taken of the property and obligations due to and from such corporation, and may appoint one or more receivers.

"Sec. 3260b. If, on the coming in of the answer or upon the taking of such . account, it appears that such corporation is insolvent, and has not sufficient property or effects to satisfy such creditor, the court may proceed to ascertain the respective liabilities of the directors, officers and stockholders, and enforce the same by its judgment, as in other cases.

"Sec. 3260c. In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such a corporation is insufficient to discharge its debts, the court shall give notice to nonresident stockholders as provided in sections 5048, 5049, 5050, 5051 or 5052 of the Revised Statutes, and shall first proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

"Sec. 3260d. If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases. The court may authorize and direct the receiver to prosecute such action in his own name as receiver, as may be necessary, in other jurisdictions to collect the amount found due from any officer or stockholder.

"Sec. 3260e. Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment.

"Sec. 3260f. Upon a final judgment in any such action against an insolvent corporation, the court shall cause a just and fair distribution of the property and assets of such corporation or the proceeds thereof to be made among its creditors.

"Sec. 3. This act shall apply to pending actions, and shall take effect and be in force from and after its passage."

Sections 5048–5052 are now sections 5045–5049, and provide in detail how service on nonresidents by publication is to be made.

The Ohio procedure having thus been changed, the Marriott and the Kinsey petitions were consolidated, and in June, 1902, a master was appointed with instructions to—

"proceed according to law to take and receive evidence and determine what persons, firms, and corporations (other than those already parties hereto) should be made parties herein; to ascertain the address and residence of each such stockholder of the defendant corporation; * * * to determine what transfers of stock have been made not of record, and those which are of record, and the dates of each; to determine the solvency or insolvency of the various stockholders, the amount of stock held by each, the dates thereof; the indebtedness of said defendant corporation, and the names and addresses of such creditors, in such manner as is provided by law. and do all other matters necessary, proper, and lawful to enforce the liability of the stockholders of the said defendant corporation."

Leave was also given to the plaintiffs (and freely used) to make new parties to the cause from time to time during the hearing as the same might be discovered, without further order or direction of the court. Blackburn was named as a stockholder for the first time in August, 1902, and the statutory requirements for service by publication upon him and many other stockholders were complied with in September or October. The cause went on before the master until March, 1905, when his report was completed and filed. He found as facts the insolvency of the railroad company since June 2, 1897; the insufficiency of its assets; the names and residences of all, or nearly all, the stockholders, solvent and insolvent; the amount of their respective holdings; the names of the corporate creditors and the amounts due them; and he complied in other respects with the order of June, 1902. The report was confirmed on July 17, 1905, and the court's decree of that date determined the amount of the corporate indebtedness; adjudged "that said corporation at the time of the beginning of this action was insolvent and had no assets of any kind with which to pay its debts, and is now insolvent and has no assets of any kind with which to pay its debts; and that, by reason of the amount of said indebtedness and the costs above mentioned and the insolvency of many of the stockholders of said company, it is necessary in order to pay said indebtedness and costs to make an assessment of 25 per cent. of the par value of the stock held by each and all of the said company defendants herein and against each of them in a sum of money equivalent to 25 per cent. of the face value of the total number of shares of said stock held and owned by each of said stockholders." The decree then determined who the stockholders were "at the time of the commencement of this action" (naming Blackburn as one of them); assessed 25 per cent. against each of them; and ordered the money to be paid to Irvine as receiver on or before August 20, 1905. The receiver was "authorized and ordered to collect by suit or otherwise said judgments and assessments hereinbefore rendered and found due against the said several defendant stockholders, to make proper receipts for the same, and also to make proper distribution thereof in accordance with the future orders of this court; and * * * to collect and enforce by suit or by such action filed in his own name as receiver as may be necessary, or otherwise, in any jurisdiction and before any court of competent juris-

diction, all assessments ordered and made or amounts due or found due herein against each and all persons, etc., who have been made parties defendant herein and served by publication or otherwise," etc.

In December, 1906, further objections to the master's report having been heard and considered, the court made a supplemental decree in which (after disposing of various matters) it was ordered that the receiver—

"is hereby vested with the title and ownership of all and singular the goods, chattels, properties, and assets, both real and personal, of (the railroad company) wherever situated or held, and said receiver is hereby given the right and power to proceed to collect by suit or otherwise in his own name as such receiver, any debts due to or owing to said (railroad company), and to recover any property belonging to said (railroad company) ; and said receiver is hereby authorized to do any and all acts which said (railroad company) could do or could have done for the purpose of recovering any debts due to said corporation or property belonging to it; and he is hereby authorized and ordered to collect by suit or otherwise, said judgments and assessments hereinbefore rendered and found due against the said several defendant stockholders, make proper receipts for the same, and also to make proper distribution thereof in accordance with the future orders of· this court; and said receiver is hereby further authorized, directed, and empowered to proceed to collect and enforce by suit or by such action filed in his own name as such receiver as may be necessary, or otherwise, in any other jurisdiction and before any court of competent jurisdiction, all assessments and judgments ordered and made, or amounts due or found due herein, against each and all persons, etc., who have been made parties defendant herein and served by publication or otherwise, or who are parties defendant or .have been found by the court to be stockholders in said (railroad company) and liable to such· assessment or judgment, all according to the statute in such case made and provided."

The Supreme Court of Ohio affirmed these decrees early in May, 1909, and on May 28th the common pleas of Franklin county made a second supplemental decree, in which it again empowered the receiver to sue, either in the state of Ohio or elsewhere, for the recovery of the amounts due from the stockholders, resident or nonresident—

"and whether they or either of them were served with process herein by publication or otherwise; and said receiver is further authorized and empowered to commence and prosecute such actions or other proceedings against any such defendants and against any stockholders in said railroad company who were, during the pendency of this action, nonresidents of the state of Ohio, whether personally served with process or not in this cause.    *    *    *"

(And the court) "further ordered and adjudged that the said    *    *    *    receiver be and he hereby is invested with the title and ownership in trust for the creditors of said railroad company of all and singular the assets, both real and personal, of said railroad company; and all the rights of the creditors of said railroad company against the stockholders of said railroad company wherever situated or held, including the several sums hereinbefore or hereafter found due from the stockholders of said railroad company," etc.

[3] 3. Acting under the authority given by the act of 1900 and by these decrees, Irvine brought the present suit in June, 1910, to recover the assessment of 25 per cent. on the Blackburn stock. At this point we encounter the next defense, namely, that the receiver has no power to sue in a foreign jurisdiction. We have referred to the statutes of Ohio and the court proceedings with a good deal of detail in order to make clear the close resemblance between the present situation and

the situation that was considered by the Supreme Court in Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163. That case arose under the Minnesota law concerning a similar double liability. The earlier legislation of that state was defective in several important particulars—as was the Ohio act of 1894 (91 Ohio Laws, p. 88)—and the consequence was that in neither state did a court have the power to authorize a receiver to sue in a foreign jurisdiction. The general chancery powers of the court were not sufficient, and enabling legislation on the subject was lacking. This was decided for Minnesota in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, and that case is equally decisive against the Ohio law as it stood in 1894. But, by an act passed in 1899 (Acts 1899, c. 272) Minnesota attempted to cure the defects of her earlier law, and in Bernheimer v. Converse the Supreme Court held the attempt to be successful. Bernheimer was a nonresident stockholder when the act of 1899 was passed, and could not then have been sued in a foreign court by a receiver appointed and authorized under the previous law. But the court held that the act of 1899 had supplied the defects theretofore existing, and had made the receiver a quasi assignee and representative of the creditors; that as such assignee and representative he was vested with authority to maintain an action in a foreign jurisdiction; and that such a change in the powers of a receiver was merely a change in the remedy, of which Bernheimer could not lawfully complain. The act of 1899 had not increased the liability arising from his ownership of stock, but had only changed the remedy for enforcing it, and this was within the constitutional power of the Minnesota Legislature. And the court held, also, that since an assessment for the benefit of creditors upon this liability was necessary, it might be made without the presence or the personal service of himself or of the other stockholders. There was no substantial difference, the court declared, between a liability to be ascertained for the benefit of creditors upon an unpaid subscription to stock, and a liability for the same purpose that was imposed by the law of the state and arose out of the holding of stock whereby a contract was implied in favor of creditors.

"The object of the enforcement of both liabilities is for the benefit of creditors, and, while it is true that one promise is directly to the corporation and the other does not belong to the corporation but is for the benefit of its creditors, either liability may be enforced through a receiver acting for the benefit of the creditors under the orders of a court in winding up the corporation in case of its insolvency."

See, also, Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, and Shipman v. Treadwell, 200 N. Y. 472, 93 N. E. 1104.

We are unable to see any important difference between the Ohio statute of 1900 and the Minnesota statute of 1899, and we are therefore of opinion that Blackburn was bound by the assessment of 25 per cent., and that Irvine as receiver was empowered to bring the present suit in a foreign jurisdiction. We may add that we lay no weight upon the supplemental decrees of December, 1906, and May, 1909, standing by themselves. The source of the court's power was the act of 1900, and this statute (interpreted by the decision in Bernheimer

v. Converse) was sufficient to clothe a receiver with the attributes of a quasi assignee or representative of the creditors. The supplemental decrees did no harm, but we think they did little, if any, real good.

[4] 4. It remains to consider whether this suit is barred by any statute of limitation, either of Ohio or of Pennsylvania. Let us look for a moment at one feature of the obligation that Blackburn took upon himself when he became a stockholder. In Wright v. McCormack, 17 Ohio St. 86, it is thus described:

"The liability thus imposed on stockholders is not a primary resource or fund for the payment of the debts of the corporation. It is collateral and conditional to the principal obligation which rests on the corporation, and is to be resorted to by the creditors only in case of the insolvency of the corporation, or where payment cannot be enforced against it by the ordinary process. It is a security provided by law for the exclusive benefit of the creditors, over which the corporate authorities can have no control."

This being the liability, the first step toward enforcing it must be taken by a suit, not in a foreign court, but always in a court of the state, where the Ohio method of procedure must be followed. Middletown Bank v. Railway Co., 197 U. S. 394, 25 Sup. Ct. 462, 49 L. Ed. 803; Bank v. Sayward (C. C. A.) 91 Fed. 443, 33 C. C. A. 564. To this proceeding the corporation should be a party. Umsted v. Buskirk, 17 Ohio St. 113. The suit is for the benefit of all the creditors, and the purpose of the statute is to make all persons in interest parties to the action, in order that all questions may be determined in a single proceeding. All the stockholders—domestic and foreign, solvent and insolvent—are to be included. Any creditor has a right to begin such a suit, and may do so as soon as the insolvency of the corporation has become manifest. Insolvency is usually shown in one of two ways: (1) An execution in favor of a creditor may be returned unsatisfied; or (2) the corporate property may be devoted to the payment of debts by some legal proceeding, such as dissolution of the corporation, bankruptcy, assignment for the benefit of creditors, or the appointment of a receiver, for in either of these events a judgment and execution could no longer be fruitful. Bronson v. Schneider, 49 Ohio St. 438, 33 N. E. 233; Younglove v. Lime Co., 49 Ohio St. 663, 33 N. E. 234. Therefore, since stockholders (either foreign or domestic) may in one way or another be brought into court as soon as the appointment of a receiver has determined the fact of insolvency, it follows that the statute of limitations will begin to run in favor of all the stockholders from the date of the appointment. Bronson v. Schneider, supra; Younglove v. Lime Co., supra; King v. Armstrong, 50 Ohio St. 238, 34 N. E. 163. If a domestic stockholder be not brought into court by the personal service of a summons within six years from the date of the receiver's appointment (and this happened in the case of several domestic stockholders of the Hocking Company), he is protected by the ordinary statute of limitation—as the Supreme Court of Ohio has decided. But if service should be made upon him within that period the statute ceases to run, and he is then in court for all further purposes connected with the proceeding, and must await the result of the inquiry concerning corporate debts and assets and the extent of his own liability. This liability is necessarily contingent and undefined until the need for an

assessment has been made to appear, and until the exact amount required from him has been ascertained. For such amount, execution may issue against him in the same proceeding without the need of a second suit.

The situation of a foreign stockholder is different, and must of necessity receive different treatment. If no suit to enforce the double liability should be brought within six years, doubtless he could not be discriminated against; speaking generally, he would be protected by the Ohio limitation as completely as the domestic stockholder. But, if the suit should be brought during the six years and if the corporation be made a party defendant, the corporation then represents the foreign stockholder, at least for certain purposes of administration, and for these purposes service upon the corporation is of course equivalent to service upon the stockholder. This is the general rule, and is so thoroughly understood that the citation of authority is hardly needed; a mere reference to Bernheimer v. Converse, 206 U. S. 532, 533. 27 Sup. Ct. 755, 51 L. Ed. 1163, is sufficient. It may be true, however, that the Ohio legislation has pointed out another method of reaching the foreign stockholder. Instead of relying wholly on the general rule that the corporation represents such stockholders for the purpose of assessing their stock, the Legislature may have intended to substitute service by publication, or perhaps to offer it as an additional or alternative method of bringing nonresidents into court. At all events, the act of 1900 does provide for such service, and its provisions have been complied with. Blackburn was made a party thereby, either in September or October, 1902—within six years from June 2, 1897, the date of insolvency fixed by the Ohio courts—and, as we have already stated, the corporation was made a party to the original proceedings in 1899. If representation by the corporation is still sufficient in Ohio to validate certain acts of administration, there may have been no need to comply with the publication prescribed by the act of 1900; but we can see no objection to the publication, even if we regard it as a superfluous effort to convey notice to the foreign stockholders. Indeed, unless such a stockholder should be casually found within the state, no other method of giving him legal notice is possible; for the suit cannot be brought in a foreign court, and Ohio process does not run outside the state. But, as the Ohio courts have undoubted jurisdiction of the subject-matter, the res—namely, a liability imposed by Ohio law upon the obligor under an Ohio contract concerning shares in an Ohio corporation—we think the Legislature was clearly within its right in providing that a foreign defendant in such a dispute might be served by publication in accordance with established practice. Of course, such service does not foreclose personal defenses—for the assessment can only be made effective by a second suit in a foreign court—but we see no good reason why it may not stop the running of the statute of limitations.

In brief, if no suit should be brought in Ohio for six years after insolvency, all stockholders are fully protected; during that period, domestic stockholders must be found and served, and foreign stockholders may—and perhaps must—be served by publication. If the corpo-

ration still represents the last-named class sufficiently for certain purposes, they *may* be served by publication also; if the corporation no ,longer represents them sufficiently, they *must* be so served. In either view Blackburn was bound to some extent by the decree of July, 1905, for both he and the corporation had been properly brought into court within six years from the date of the company's insolvency.

[5] But it is said that a special statute of limitation is applicable—the Ohio act of April 29, 1902, which provides that:

"An action upon the liability of stockholders can only be brought within 18 months after the debt or obligation shall become enforceable against stockholders."

Only a few words need be said about this contention. The essential rights of creditors were fixed by the insolvency in June, 1897, and at that time one—and not the least valuable—among these rights gave six years' time to find and bring in the stockholders, domestic or foreign. The Legislature did not have the constitutional power to take that right away, or to impair it seriously, without affording the creditors a reasonable time during which it might still be exercised. As was said in Koshkonong v. Burton, 104 U. S., at page 675, 26 L. Ed. 886:

"It was undoubtedly within the constitutional power of the Legislature to require as to existing causes of action that suits for their enforcement should be barred unless brought within a period less than that prescribed at the time the contract was made or the liability incurred from which the cause of action arose. The exertion of this power is, of course, subject to the fundamental condition that a reasonable time, taking all the circumstances into consideration, be given by the new law for the commencement of an action before the bar takes effect"—citing cases.

See, also, Wheeler v. Jackson, 137 U. S. 255, 11 Sup. Ct. 76, 34 L. Ed. 659. As the act of 1902 gives the creditors no time whatever, reasonable or unreasonable, this omission would of itself be fatal to the act, if it must be held to apply to suits then pending. But it need not be condemned; in our opinion it does not apply at all in the present controversy, and we shall assume that the Legislature did not intend it to apply. The reason is briefly this: By a general law of Ohio, enacted in 1866 (section 26, General Code 1910), it is provided:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal; and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions or proceedings, unless so expressed; nor shall any repeal or amendment affect causes of such action, prosecutions or proceedings, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

The act of 1902 is a repealing or amending statute relating to the remedy, and it does not express an intention to affect pending proceedings. There seems to be no room to doubt that it was only intended to operate prospectively; and it can have no effect, therefore, on the present dispute.

[6] Neither does the Pennsylvania statute furnish a defense. No suit could have been brought in this state to recover a money judgment against Blackburn, until his liability had first been precisely defined in

the Ohio proceeding; and this did not take place until July, 1905. Not until then was his stock actually assessed and a decree entered commanding him to pay a definite sum of money on or before a definite date, and appointing a receiver to sue for it in case of default. No suit could have been brought in Pennsylvania before the entry of that decree (Marsteller v. Marsteller, 93 Pa. 350; Riner v. Riner, 166 Pa. 617, 31 Atl. 347, 45 Am. St. Rep. 693; Hoiles v. Riddle, 74 Ohio St. 173, 78 N. E. 219, 113 Am. St. Rep. 946; Bernheimer v. Converse, 206 U. S. 534, 27 Sup. Ct. 755, 51 L. Ed. 1163); and, as the action now before us was brought in June, 1910, it was in time. A similar conclusion has been reached in the Fourth Circuit in Irvine v. Bankard (C. C.) 181 Fed. 206, affirmed (C. C. A.) 184 Fed. 986. In some respects the opinion in that case pursues a different road, and (without intimating any dissent) we have not followed it throughout.

The judgment is affirmed.