## IRVINE v. BANKARD.

### (Circuit Court, D. Maryland. July 7, 1910.)

1. COURTS (§ 311*)—SUIT BY RECEIVER TO ENFORCE STATUTORY LIABILITY OF STOCKHOLDER—JURISDICTION OF FEDERAL COURT.

Under Rev. St. Ohio 1908, § 3260d, which empowers the court in a creditor's suit against an insolvent corporation to adjudge the amount payable by each stockholder under the double liability provided for by the statute, and to appoint a receiver to collect the same with authority to maintain suits therefor against stockholders in other jurisdictions, such a receiver is in the position of a quasi assignee, representing all of the creditors, and may maintain an action in a federal court in another state, and his own citizenship, and not that of the creditors, affords the test of jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 858; Dec. Dig. § 311.*]

2. LIMITATION OF ACTIONS (§§ 58, 106*)—ACCRUAL OF RIGHT OF ACTION—SUIT BY RECEIVER TO ENFORCE STATUTORY LIABILITY OF STOCKHOLDERS.

Under such statute limitation does not begin to run against an action to recover from a stockholder in another state until a decree is entered making an assessment and appointing a receiver for its collection, and, if an appeal is taken and perfected from such decree, the running of the

statute is suspended during its pendency, even though it is taken by creditors.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 327, 516; Dec. Dig. §§ 58, 106;* Corporations, Cent. Dig. §§ 1084–1093.]

3. LIMITATION OF ACTIONS (§ 13*)—ESTOPPEL TO RELY ON STATUTORY LIABILITY OF STOCKHOLDER—LIMITATIONS.

A receiver appointed in a creditor's suit against an insolvent corporation and authorized to bring actions against stockholders for the collection of assessments made against them is not estopped from asserting that the pendency of an appeal from the decree suspended the running of limitation against such an action, because during such pendency he settled and received payment of claims against other stockholders.

[Ed. Note.—For other cases, see Limitation of Actions, Dec. Dig. § 13.*]

4. CORPORATIONS (§ 235*)—STATUTORY LIABILITY OF STOCKHOLDERS—REORGANIZATION.

In the reorganization of an Ohio railroad company, the new company assumed the debts of the old, and provided for an issue of first-lien bonds to be sold, and the proceeds used to pay such indebtedness. Under the statute of the state, the stockholders were subject to double liability, but such bonds contained a provision by which the holders waived the right to resort to such liability in consideration of the lien given. *Held*, that a stockholder of the old company who became a party to the reorganization and exchanged his stock for stock in the new company was subject to the additional liability for the debts of the old company so far as they were not discharged from the proceeds of the bonds sold.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 235.*]

Action by Ellsworth C. Irvine, receiver, appointed by certain decrees of the court of common pleas of Franklin county, Ohio, against Edgar H. Bankard. Judgment for plaintiff.

J. Morfit Mullen (W. Calvin Chesnut and Gans & Haman, on the brief), for plaintiff.

Joseph C. France, for defendant.

ROSE, District Judge. Seventeen years or more ago the defendant became the owner of 80 shares of the preferred and 25 shares of the common stock of the Columbus, Shawnee & Hocking Railroad Company. That corporation will be spoken of as the "Shawnee Company." In the summer of 1895 its stock had no market value. The defendant tried to sell his 105 shares for $400. No one would buy. He could not give up all hope of ever getting anything for them. He went into a reorganization scheme. He exchanged his 105 shares in the Shawnee Company for the same number of shares in the Columbus, Sandusky & Hocking Railroad Company, which will hereafter be called the Railroad Company. Receivers were appointed for the Railroad Company on June 2, 1897. On July 29, 1909, the present suit was brought. The plaintiff is a receiver appointed by the court of common pleas of Franklin county, Ohio. He seeks to make the defendant pay $2,625 principal as an assessment of 25 per cent. on the par value of the defendant's 105 shares. The plaintiff in addition asks for nearly $770 interest. These payments defendant does not want to make. He sets up various defenses. While some of these are substantial, others are technical. Whether technical or substantial they go to the right of the plaintiff now to re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cover in any form of action. No objection is made to anything which could be cured by amendment.

The defenses are of four kinds: First. The plaintiff has no right to sue in this court. Second. Limitations. Third. The defendant is not liable as a stockholder because he became such conditionally and the condition has not been fulfilled. Fourth. The defendant if liable at all is liable for a portion only of the debts for the payment of which the assessment in suit was levied.

These defenses will be considered in the order in which they have been stated.

First. Has the plaintiff a right to sue in this court? The defendant says he has not, and that for two reasons: (a) Because the plaintiff is a mere receiver of a chancery court of another state than Maryland, and has himself no title as assignee or quasi assignee of the claims in right of which he sues. (b) If he be an assignee at all, he is the assignee of the rights of the creditors. As such he cannot maintain this suit in a Circuit Court of the United States on the ground of diversity of citizenship between himself and the defendant, unless every one of the creditors in whose right he sues was at the time the suit was brought a citizen of a different state from Maryland, of which the defendant was then and still is a citizen. The defendant says it affirmatively appears that at least one of such creditors was at the time suit was brought and is now a citizen of Maryland. Are these reasons, or either of them, sound?

(a) Can the plaintiff as receiver sue in a court of the United States for any district outside the state of Ohio? If he is such a receiver as brought the case of Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, he cannot. If he is such a receiver as was plaintiff in Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, he can. Which is he? The Constitution of Ohio made stockholders liable to the creditors of an insolvent corporation to an amount equal to the par value of their stock. The law attempted to provide the machinery to enforce this liability. By its terms a suit in equity is brought by a creditor or creditors against the corporation and its individual stockholders. In that suit the insolvency of the corporation is ascertained and the amount by which its liabilities exceed its assets. The court determines who are stockholders liable to assessment. This determination is final as to those persons who have been personally summoned, or who have appeared to the suit. It is provisional only as to those nonresidents of Ohio who have neither been summoned in Ohio, nor have voluntarily appeared in the cause. Inquiry is made as to which of the stockholders are solvent and which are not. The court is then able to calculate how large an assessment must be imposed upon each share of stock to raise from the solvent stockholders a sum sufficient to pay the debts of the corporation and the costs and expenses of the proceeding. It thereupon makes such assessment. It decrees in dollars and cents the amount to be paid by each stockholder who was made a party to the proceedings either by service, appearance, or publication. This decree is a final judgment against all those who were summoned, or without summons voluntarily appeared. Exe-

cution against such persons may issue upon it. It is not a personal judgment against those who were made parties by publication only. To bind them suits must be brought against them in some jurisdiction in which service of process can be had upon them.

The Minnesota statute of 1894, under which the receiver in Hale v. Allinson was appointed, made no specific provision for the collection of assessments from nonresident stockholders. The Minnesota courts held that, in the absence of any statutory authority, they had the right in the exercise of their general chancery jurisdiction to authorize a receiver appointed by them to sue in the courts outside of Minnesota. The Supreme Court in Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, said they had no such right. In the view of the Supreme Court that receiver took no title to the fund. No statute purported to vest any authority in him. He was the mere arm of the court, and nothing more. In the case at bar the Ohio courts acted under the authority given by section 3260d of the statutes of that state (Rev. St. 1908). It is there provided that the court may authorize and direct the receiver to prosecute such action in his own name as receiver as may be necessary in other jurisdictions to collect the amount found due from any officer or stockholder. In no other material respect is the Ohio law different from the Minnesota law of 1894 considered by the Supreme Court in Hale v. Allinson. Indeed, in large part the two statutes are even verbally identical. Defendant dwells on this identity. He points out many details in which the Ohio statute differs from the Minnesota act of 1899 which the Supreme Court held in Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, authorized a receiver appointed thereunder to sue in other jurisdictions. He says that the Supreme Court so held because in its view the Minnesota receiver there suing was a quasi assignee and representative of the creditors, and as such was vested with authority to maintain the action. He subjects the provisions of the Ohio law to a minute examination. He asserts that they do not either direct or make any assignment of title to the receiver. The answer is that neither does the Minnesota statute of 1899. One may ordinarily sue anywhere for the recovery of that to which he has title. Booth v. Clark, 17 How. 322, 15 L. Ed. 164. By the decree of December 22, 1906, the court of common pleas of Franklin county decreed that the receiver was thereby vested with the title and ownership of all and singular the goods, chattels, property, and assets, both real and personal, of the Columbus, Sandusky & Hocking Railroad Company wherever situated or held. Under the Minnesota act of 1899 and the Ohio law now before the court, the Legislature for the purpose of making available for creditors stockholders' liability provided for the appointment of a receiver. It empowered the court to authorize such receiver to sue in other jurisdictions. As I understand Bernheimer v. Converse, that receiver in virtue of such statutory appointment and judicial authorization thereunder is in the position of a quasi assignee and representative of the creditors. If he is such, he may sue.

181 F.—14

Jurisdiction of a suit brought by this very receiver under the very decree sued on in this case has been upheld by the Circuit Court of the United States for the Southern District of California in Irvine v. Putnam, 167 Fed. 174, and in the case of Irvine v. Chicago, Wilmington & Vermillion Coal Co. by the Circuit Court of the United States for the Northern District of Illinois, a transcript of the record in which case has been furnished me. I do not know that it has been reported.[1] See, also, Howarth v. Lombard, 175 Mass. 577, 579, 56 N. E. 888, 49 L. R. A. 301; Howarth v. Angle, 162 N. Y. 185, 56 N. E. 489, 47 L. R. A. 725; Goss v. Carter (5th Circuit) 156 Fed. 746, 84 C. C. A. 402.

· (b) The defendant says that the jurisdiction of this court is invoked on the ground of diversity of citizenship. He is a citizen of Maryland. If the plaintiff, a citizen of Ohio, sues as the assignee of the creditors, he must allege that every one of those creditors is a citizen of a state other than Maryland. That he has not done. The record affirmatively shows that among the creditors is at least one Maryland corporation, viz., the Baltimore & Ohio Railroad Company. The Ohio courts in considering the nature of the proceedings of a creditor under their law to enforce the individual liability of the stockholders have said that the order for the distribution of the fund is not a judgment in favor of creditors, but an order upon the receiver to distribute the fund in his hands, whatever that fund may be. Herrick v. Wardwell, 58 Ohio St. 306, 50 N. E. 903. The plaintiff in this case is not an assignee of the claims of the individual creditors. He is a quasi assignee of all of them, and is their representative. He sues in a representative capacity, and his citizenship, and not that of those whom he represents, affords the test of jurisdiction. The relation of the plaintiff to this cause is such that this case is ruled by Chappedelaine v. Dechenaux, 4 Cranch, 306, 2 L. Ed. 629, and not by Glass v. Concordia Parish Police Jury, 176 U. S. 210, 20 Sup. Ct. 346, 44 L. Ed. 436, or by Sere v. Pitot, 6 Cranch, 332, 3 L. Ed. 240. Where a creditor is a citizen of another state from his debtor, he may file in a Circuit Court of the United States a creditor's bill, or a bill in the nature of a creditor's bill. This bill must be filed on behalf not only of the actual complainant, but of all other creditors. It is no objection to the jurisdiction that some or many of those other creditors may be citizens of the same state as the debtor. Such creditors may come into the case, participate in its conduct, and have all the benefit of its decrees.

Second. The defendant says that, if the plaintiff has the right to sue in this court, the suit he has brought is barred by limitations. The railroad company became insolvent June 2, 1897. The defendant asserts that under the law of Ohio no suit can be brought against him subsequent to six years from that date. In other words, he claims that the present action, if otherwise maintainable, should have been instituted not later than June 2, 1903. It was begun July 29, 1909. In Ohio stockholders must be made parties to the proceeding in which the assessment is made. No stockholder who is not made a party within six years of the insolvency of the corporation can

[1] No opinion filed.

be held liable. A stockholder resident in Ohio is not made a party until a summons is issued against him. Marriott v. Railway Co., 14 Ohio Dec. N. P. 597; Marriott v. C. S. & H. R. R. Co., 2 Ohio N. P. (N. S.) 231. None of the Ohio cases to which reference has been given me hold that such summons must actually be served upon the stockholder within the six years. It is enough if the plaintiff causes such summons to issue within that period. He has then done all he can do in the matter. If the summons be not served promptly, the fault may be that of the sheriff or that of the defendant. It is not that of the plaintiff. The same rule applies to nonresident defendants. The plaintiff must do all that he can to make them parties and to apprise them of the pendency of the action. He must ·name them in his bill. He must get and publish an order of publication against them. The defendant in the case at bar was so made a party, and was so published against. It is admitted that he received actual notice by mail of the filing of the bill, and that he was named as a party defendant in it. The defendant's failure to appear was not the fault of the plaintiff. The latter had within six years from the insolvency of the corporation done all that in his power lay to bring the defendant into the proceedings. In Ohio, as in Maryland, the statute of limitations does not begin to run until there is some one in existence qualified to sue. Hoiles v. Riddle, 74 Ohio St. 173–180, 78 N. E. 219, 113 Am. St. Rep. 946; Trustees of Greene Township v. Campbell, 16 Ohio St. 16; Rockwell v. Young, 60 Md. 563–566. Under the Ohio law, a receiver appointed by the court is the only person who is ever qualified to bring in any court outside of Ohio such a suit as that now pending. No· receiver was appointed in Ohio until July 17, 1905. Before that date, the statute did not begin to run in favor of the defendant. Ordinarily in cases like that now in hand the period of limitations is counted from the date of the order or decree imposing the assessment. Bernheimer v. Converse, 206 U. S. 534, 27 Sup. Ct. 755, 51 L. Ed. 1163; Goss v. Carter (5th Circuit) 156 Fed. 746, 84 C. C. A. 402. In Ohio this rule is modified to the extent of requiring the plaintiff in the original creditors' proceeding to do all in his power within six years of the insolvency of the corporation to make every stockholder he seeks to hold liable a party. I do not think that the difference between the Ohio law and that generally prevailing goes farther.

The contention that a claim against a nonresident stockholder is barred unless sued on within six years from the time at which the corporation became insolvent was made in the United States Circuit Court for the Southern District of California in a suit brought by the present plaintiff under the same decree of the court of common pleas of Franklin county, Ohio, as that sued on here. Judge Wellborn held the defense was not well taken. Irvine v. Putnam (C. C.) 167 Fed. 174. I am of the same opinion.

The defendant says that if it be true that limitations do not begin to run in his favor until the 17th day of July, 1905, when the court of common pleas made the assessment, they did begin to run then. He further contends that under the law of the forum—that is, the law of Maryland—an action to recover such assessment from a stockholder

must be brought within three years. In other words, that this suit should have been brought not later than July 17, 1908. As before stated, it was not brought until July 29, 1909, which was four years and twelve days after the decree of July 17, 1905. The plaintiff says that the operation of that decree was suspended by an appeal for a period of three years and nine months from the 11th of August, 1905, when it was perfected in the court of common pleas of Franklin county until the 11th of May, 1909, when it was finally dismissed by the Supreme Court of Ohio. If these three years and nine months be deducted from the four years and twelve days which elapsed between the decree of the court of common pleas and the bringing of the present action, there remains but three months and twelve days during which this suit could have been brought.

The plaintiff contends that the law is well settled that an appeal which suspends the operation of a judgment or a decree likewise suspends the running of the statute of limitations against such judgment or decree for the same length of time. If he be right, less than four months had run against him when his suit was brought. Defendant answers that the decree was passed July 17, 1905. The appeal was perfected August 9, 1905. During these 23 days the plaintiff might have sued. Nothing which happens after the statute begins to run has any effect upon it, he says. If the appeal when perfected operated to stay the judgment or decree, the general rule relied upon by the defendant has no application. In such case the time during which the stay lasted must be deducted from the aggregate time which elapsed between the entering of the judgment and the bringing of the suit upon it. Braun v. Sauerwein, 10 Wall. 223, 19 L. Ed. 895; Broadfoot v. Fayetteville, 124 N. C. 478, 32 S. E. 804, 70 Am. St. Rep. 619; St. Paul, Minneapolis & Manitoba Railway Co. v. Olson, 87 Minn. 120, 91 N. W. 294, 94 Am. St. Rep. 693; Klumpp v. Thomas, 162 Fed. 854, 89 C. C. A. 543; 25 Cyc. 1280; 19 Am. & Eng. Enc. of Law (2d Ed.) 218–19. Moreover, common sense must not be altogether disregarded in applying any rule of law. In every case it takes some little time to perfect an appeal. If under the law of a particular state a judgment is unenforceable pending an appeal, the statute of limitations will not run against such judgment while the appeal is pending. Upon the defendant's contention, it would always so run unless the appeal was perfected on the day the judgment was entered. The Supreme Court did not in Montgomery v. Hernandez, 12 Wheat. 135, 6 L. Ed. 575, stop to inquire whether the appeal was perfected the day the decree was handed down or not. Doubtless the court thought it mattered naught whether such was or was not the case. I do not think that there is any question that under the law of Ohio a perfected appeal suspends pending the appeal the operation of the judgment appealed from. Bates' Ann. St. Ohio, 1908, § 5235; Jenney v. Walker, 80 Ohio St. 105, 88 N. E. 123. The plaintiff claims, and the defendant in his brief admits, that an invalid appeal when allowed must be respected until the appellate court has passed upon the question. It therefore seems to be immaterial that the Supreme Court of Ohio ultimately determined that in this case "no valid or lawful appeal

or proceeding in error was ever prosecuted, and that the attempted appeals from the court of common pleas to the Circuit Court should be dismissed and held for naught."

Defendant contends. that the ordinary rule that pending such an appeal as stays the operation of a judgment the running of the statute of limitations is suspended has no application to this case. He says that the appeal was taken by creditors who were in privity with the present plaintiff. If they chose to suspend the proceedings, he argues, by taking an appeal which they had no right to take, they cannot complain if while they were engaged by the appeal in an attempt to get a larger judgment limitations ran against them and in effect took from them much of that for which they had already secured a decree. It is true that the plaintiff in this case is in one sense the representative of the creditors. What is recovered by him, if anything, will go to them. He is also an officer appointed by the court under the authority given to the court by the statutes of the state. He represents, not only 'the particular creditor or creditors who took the appeal, but all the creditors. I do not think that any of the authorities cited by the defendant will justify this court in holding that the plaintiff in this case is estopped to say that the judgment of July 17, 1905, was suspended by the appeal taken by some of the creditors.

It is said that the plaintiff in this case by receiving from some of the stockholders assessments during the pendency of the appeal, and by doing other acts which the record indicates he may have done, has (1) shown that he did not believe the judgment imposing the assessments was suspended during the pendency of the appeal; or (2) has estopped himself from now asserting as against this defendant that the appeal did suspend such judgment. There were many parties to the original proceeding. Their situation differed widely. It would be dangerous to assume that everything which was done in the case out of court as between the receiver and some of these parties was done in accordance with any fixed principle of law. In any event, it is of no legal importance what the plaintiff then thought the law was. His mistake as to what it was, if he made any, does not bar him or any one else who did not deal with him on the basis of such mistaken opinion. Nor do I see that anything which he has done, or which it may be more or less clearly inferred from the record he may have done, in anywise prejudiced the defendant. I do not think, therefore, that there is any reason to hold that the plaintiff is estopped to maintain this action. If I am right in the conclusions I have thus far reached, it will be unnecessary to consider the Ohio statute, which prescribes that an action to enforce a stockholder's liability shall be begun in eighteen months after the debt or obligation shall be enforceable against stockholders. In my view, this action against this defendant was brought in less than four months after the debt or obligation became enforceable against him.

For that reason, there is no occasion to decide whether the plaintiff is right in his contention that in Maryland such a suit as that at bar may be brought at any time within 12 years from the time at which the assessment was made. He points out that a creditor of a Maryland cor-

poration sued a stockholder to enforce the stockholder's liability for the judgment debt of the corporation. The Court of Appeals of Maryland held that in such an action a plea of the three-year statute of limitations was bad. It ruled that the suit against the stockholder was in effect a suit upon the judgment against the corporation. A suit on a judgment is in Maryland not barred until the judgment is above 12 years' standing. Weber v. Fickey, 47 Md. 196. In the somewhat earlier case of Garling v. Baechtel, 41 Md. 305, a similar conclusion was reached. In that case a stockholder was sued by a creditor who held a bond of the corporation. The defendant in his brief says that no suit was entered against the railroad company in the parent case. In this he is mistaken. Not only is the titling of the case Marriott v. Columbus, Sandusky & Hocking Railroad Co. & Others, defendants, but the bill of complaint expressly names that company as the first of the defendants. The decree ascertained the amount of the indebtedness of the corporation to each of its creditors. In every essential it would seem to be a judgment that the corporation owed each of those creditors the sum found to be due each of them, respectively. Section 3260d of the Ohio Statutes seems to speak of such a finding of indebtedness as was made in this case as a judgment.

The plaintiff contends that, if the present suit is not to be regarded as a suit on a judgment within the meaning given to such words by the Court of Appeals of Maryland in the cases above cited, it is a suit to enforce a statutory liability. He argues that, under the Maryland statute of limitations, such a suit can be brought at any time within 12 years after the cause of action accrues. As already stated, in view of the conclusions I have announced, I do not find it necessary to pass upon either of these contentions of the plaintiff.

Being of opinion that the plaintiff is entitled to sue the defendant in this court, and that his suit is not barred by limitations, attention will be given to defendant's third defense; that is, that he is not liable as a stockholder because he became such conditionally and the condition has not been fulfilled. It will be remembered that the defendant was originally a holder of 105 shares of the stock of the Shawnee Company. That company in December, 1893, was consolidated with the Sandusky & Columbus Short Line Railroad Company. The product of this consolidation was the Columbus, Sandusky & Hocking Railway Company. This last-mentioned company will be called the Railway Company. The defendant did not take any part in this consolidation, nor did he ever become a stockholder in it. By June, 1895, the Railway Company was hopelessly insolvent. Much of its subsequent history is stated fully and clearly in the Columbus, Sandusky & Hocking Railroad Company Appeals, 109 Fed. 177, 48 C. C. A. 275, the opinion in which case is delivered by then Judge, now Mr. Justice, Lurton. It will be unnecessary here to repeat that story. It suffices to say that a scheme of reorganization was proposed. By the terms of this reorganization the new Railroad Company was to assume and pay the floating debt of the old Railway Company whatever the same might be at the time of the transfer of the property. By the terms of this agreement 2,000,000 prior lien

bonds were to be issued and sold, and out of the proceeds of these bonds the floating debt was to be paid. The agreement was to become binding and effective whenever the holders of the majority of the first-mortgage bonds of the Railway Company and the Shawnee Company should have signed it. Of course, the lien bonds could not be sold until the agreement became effective. On the 10th of September, 1895, one Parrott, who was active in the reorganization, wrote to the defendant urging him to deposit his stock with George W. Sinks, the trustee named for the purpose, and to sign a proxy for a meeting of the stockholders of the Railroad Company to be held September 23, 1895. On the 12th of September the defendant answered that with the understanding that he was not incurring any obligation to pay an assessment Parrott was at liberty to deliver his Shawnee certificates, which he inclosed, to Sinks. He further said he would sign the proxy as soon as received. On the 16th of September, 1895, Parrott answered, quoting his letter and saying to him:

"You incur no obligation other than you now have, and if plan of reorganization goes through, as we expect, you will be relieved of the obligation you now have. * * * Of course, you will have liability to assessment on new stock as you would on any stock in Ohio held by you, but, of course, not until liability is incurred by the new company, and you can dispose of it and thus avoid any, if you like, before any is incurred."

On the 18th of September the reorganization certificates were sent by Sinks, the trustee, to the defendant and accepted by the latter. On the 19th of September, 1895, the defendant wrote Parrott acknowledging his favor of the 16th, and stating:

"Your explanation as to stock assessment is satisfactory. I inclose proxy which I will be glad to have handed to proper party."

The proxy authorized Sinks and others to vote the defendant's stock at the meeting of September 23, 1895. It was so voted. The defendant has offered testimony which has been admitted subject to exception that he was aware of the Ohio law imposing liability on stockholders, and would not have taken stock in the Railroad Company if he had supposed he was assuming any liability for the debts of the Railway Company. In point of fact not enough of the prior lien bonds could be sold to pay all the floating indebtedness of the Railway Company. About two-thirds of the $700,000, for which the stockholders of the Railroad Company have been held liable, represents old obligations of the Railway Company. All the letters above mentioned were offered by the defendant, and were admitted subject to exception. If the letters and the testimony of the defendant as to what he knew and was willing to do at the time he went into the reorganization scheme would, if admitted, have any effect upon his liability, they would appear to be relevant and competent. If they have none, it will do no harm to the plaintiff to admit them. I shall therefore overrule the plaintiff's motion to strike them out.

Giving them all the weight which can possibly be attributed to them, I am of opinion that the defendant became a stockholder in the Railroad Company and is liable as such. It is admitted that he

assented to the reorganization agreement and is bound by it as if he had actually signed it. That reorganization agreement contained an unqualified promise to assume and pay the debts of the Railway Company. It is true it also attempted to provide a method of providing the money with which to pay them. The bonds to be sold for that purpose contained a provision that their holders in consideration of being given a lien upon the company's property waived all right to claim that the stockholders were liable to them. If the bonds could have been sold for enough to pay the floating debt, there would therefore have been no stockholder's liability, direct or indirect, for that floating debt. Before becoming a party to the reorganization scheme, the defendant might have waited until he knew whether the prior lien bonds could be sold for enough to pay the debts or not. He did not do so. He must be held to have formed his own opinion as to the salability of those bonds, and to have assumed the risk that they would and could be sold for enough money, and that their proceeds would be properly applied. Much that is said by Judge Lurton in the Columbus, Sandusky & Hocking Railroad Company Appeals, 109 Fed. 191, 48 C. C. A. 275, is applicable to the defendant.

What has been said with reference to the third defense is sufficient to dispose of the fourth, viz., that the defendant, if liable at all, is liable for a portion only of the debts for the payment of which the assessment in suit was levied. It is said that Parrott was a creditor of the Railway Company, and that as such his estate will share in the proceeds of any recovery which may be had of the defendant. It is further alleged that Parrott and Sinks, the trustee, were partners, and that the correspondence between Parrott and the defendant must estop Parrott's estate from enforcing any liability against the defendant. It is, moreover, urged that the defendant was never a stockholder in the Railway Company. He was never liable for any of its debts; that no creditor of the Railway Company became such upon the faith of his name being upon the list of shareholders in the Railroad Company. The foreclosure sale of the Railway Company's property did not take place until after the defendant had assented to the reorganization scheme. The creditors of the Railway Company were entitled to assume that that sale did not interest them; that, under the reorganization agreement, they would be protected to the extent of the liability of those persons who had taken stock in the Railroad Company. There is no sufficient evidence in this case to show that Parrott or Sinks, or anybody else, perpetrated any fraud upon the defendant. It is, indeed, argued that the defendant is not responsible for any of the debts of the Railway Company. That contention has been answered.

No evidence has been offered tending to show that the holders of any particular debt or debts included in this total are estopped from sharing in any recovery which may be had from the defendant. It is unnecessary, therefore, to decide whether in any event such a defense could be made in this cause.

I therefore refuse all the six prayers of the defendant. I see no sufficient reason to refuse the plaintiff interest on his claim from 21st day

of August, 1905. I therefore will render a verdict for the plaintiff for $3,393.41. Since the rights of the creditors of the Railroad Company vested, the people of Ohio have amended their Constitution in such manner that stockholders are not now liable for debts contracted since the amendment was made. Doubtless experience has convinced them that such a right was worth far less to the creditors than it cost the stockholders. These debts have all been due for more than 13 years. The litigation necessary to collect the assessments made upon the stockholders is likely to continue for years to come. Necessarily a very large part of the sums recovered from the stockholders has been and will be expended in the costs and expenses of legal proceedings. I should have been glad to have rendered a different verdict from that which I have felt constrained to give. I see no way of escaping from the conclusions which I have reached consistent with adhering to what I believe to be the law on each disputed proposition in the cause.

I wish to thank counsel on both sides for the industry, candor, and ability with which their respective contentions have been supported.