IRVINE v. BAKER et al.

SAME v. SIMPSON et al.

(District Court, S. D. New York.  July 30, 1915.)

1. RECEIVERS ⬯210—POWERS—RIGHT TO SUE.
    Under Ohio statute empowering receivers appointed by Ohio courts of insolvent corporations to sue in other states to collect stockholders' liabilities assessed against nonresident stockholders by the Ohio court, a receiver appointed by an Ohio court of an insolvent corporation has authority to sue in the federal court sitting in a sister state to recover assessments against stockholders made by the court of Ohio under the Constitution and statutes of Ohio defining the liability of stockholders.

    [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 417–420; Dec. Dig. ⬯210.]

2. CORPORATIONS ⬯261—LIABILITY OF STOCKHOLDERS—ASSESSMENTS—CONCLUSIVENESS.
    Personal notification and presence of stockholders are not necessary as far as the conclusiveness of an assessment of their liability is concerned, and apart from defenses personal to them under statutes providing methods for the enforcement of the liability, unless the statute require personal notification and presence, and ordinarily the corporation represents the stockholders for the purposes of an assessment, and the presence of the corporation is the presence of the stockholders.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1076–1083, 2273; Dec. Dig. ⬯261.]

3. CORPORATIONS ⬯259—INSOLVENT CORPORATIONS—LIABILITY OF STOCKHOLDERS—ACTIONS—STATUTES.
    An action begun under Rev. St. Ohio 1890, § 3260, as amended by Act March 22, 1894 (91 Ohio Laws, p. 88), for the enforcement of an assessment against stockholders, by service on the corporation which appeared, and pending when the section was amended by Act April 16, 1900 (94 Ohio Laws, p. 359), changing the system of enforcing the liability of stockholders, and applicable to pending actions, will be deemed to have been prosecuted under the amendment of 1900, especially where the record indicates that the court proceeded under the act of 1900.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1050, 1052–1067, 2272; Dec. Dig. ⬯259.]

4. CORPORATIONS ⬯261—LIABILITY OF STOCKHOLDERS—STATUTORY PROVISIONS.
    Rev. St. Ohio 1890, § 3260, as amended by Act April 16, 1900 (94 Ohio Laws, p. 359), providing for the enforcement of liability of stockholders of insolvent corporations and for the ascertainment of the amount of liability and the enforcement thereof by the receiver of the insolvent corporation, seeks to declare and enforce assessments, and the first may be accomplished by the presence of the insolvent corporation alone, but the second can be accomplished only when the stockholder is present or has been served, and, where a stockholder is served or appears, the assessment as to him may not only be declared, but enforced in the same suit, but the failure to properly notify a stockholder in the suit renders it necessary to sue him in an ancillary suit brought by the receiver.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1016–1023, 1068–1075, 2268–2271; Dec. Dig. ⬯261.]

5. CORPORATIONS ⬯264—COURTS ⬯368—STATUTES—APPLICABILITY.
    Act Ohio April 29, 1902 (95 Ohio Laws, p. 312), providing that an action to enforce an assessment against stockholders can only be brought with-

in 18 months after the debt or obligation shall become enforceable against them, is a statute of limitations which is pleadable by stockholders in New York by virtue of Code Civ. Proc. § 390, but the construction placed on the act by the highest court of Ohio controls.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1084–1098, 2274; Dec. Dig. ☞264; Courts, Cent. Dig. § 951; Dec. Dig. ☞368.]

6. LIMITATION OF ACTIONS ☞2—INSOLVENT CORPORATIONS—LIABILITY OF STOCKHOLDERS—ENFORCEMENT.

Under Gen. Code Ohio, §§ 8686, 8687, declaring that stockholders of a corporation who are holders of stock at a time when its debts and liabilities are enforceable against them shall be liable equally and ratably in addition to their stock in an amount equal thereto to the creditors of the corporation, and section 8688, declaring that an action on the liability of stockholders under the two preceding sections can only be brought within 18 months after the debt or obligations "shall become enforceable against stockholders," and section 8695, providing that where a receiver is appointed the court may authorize him to prosecute such actions in his own name as receiver in other jurisdictions as become necessary to collect the amount due from stockholders, when construed together and in the light of the history of the legislation, limitations to suits by receivers in other jurisdictions are governed by the statutes of the states in which brought.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8; Dec. Dig. ☞2.]

7. EXECUTORS AND ADMINISTRATORS ☞437—CLAIMS—LIABILITY AS STOCKHOLDER—PRESENTATION.

A lower court in Ohio made an assessment against stockholders of an insolvent corporation which was set aside in the Court of Appeals, which made a new assessment in double the amount, and the last assessment was set aside by the Supreme Court of Ohio and the original assessment reinstated. After the assessment by the lower court, but pending appeal, a demand for payment of the assessment was made against the estate of a deceased stockholder, which demand was rejected. *Held*, that the rejection did not start the running of limitations prescribed by Code Civ. Proc. N. Y., § 1822, declaring that suit on a claim against the estate of a decedent which has been disputed or rejected by his representative must be brought within six months from date of the dispute or rejection, since the rejection contemplated is one made at a time when suit could have been instituted immediately after it occurred by the claimant, and there could be no suit to collect the assessment until made final by the Supreme Court.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1729–1761, 1764; Dec. Dig. ☞437.]

8. CORPORATIONS ☞244—INSOLVENT CORPORATIONS—LIABILITY OF STOCKHOLDERS—DEBTS AND LIABILITIES ENFORCEABLE.

Under Rev. St. Ohio 1890, § 3258, as amended by Act April 29, 1902 (95 Ohio Laws, p. 312), and by Act April 24, 1904 (97 Ohio Laws, p. 390), providing that no stockholder who transfers his stock in good faith, if made on the books of the company or on the back of the certificate of stock properly witnessed or tendered for transfer on the books of the company, prior to the time when debts and liabilities are enforceable against stockholders, shall be held to pay any portion thereof, the date of the insolvency of a corporation, and not the date of final assessment against stockholders, determines when the debts and obligations of the corporation become enforceable against stockholders, and any subsequent transfer by a stockholder of his stock does not relieve him from liability.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. ☞244.]

9. CORPORATIONS ⬳215—INSOLVENT CORPORATIONS—LIABILITY OF STOCK-HOLDERS.

The additional liability imposed on stockholders by the Constitution and laws of Ohio is a secondary and contingent liability, and becomes a primary one and enforceable against the stockholders on the insolvency of the corporation having assets including unpaid stock subscriptions insufficient to satisfy its debts, and the first step for the enforcement of the additional liability is the proceeding to fix an assessment, and, until an assessment, no enforcement of liability is possible.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 826–828, 845–848, 852, 854; Dec. Dig. ⬳215.]

10. CORPORATIONS ⬳261—INSOLVENT CORPORATIONS—LIABILITY OF STOCK-HOLDERS—ENFORCEMENT.

Nonjurisdictional irregularities in the levy of assessments against stockholders of an insolvent corporation by the courts of a sister state are not available to impair their validity in an action therefor by a receiver of the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1016–1023, 1068–1075, 2268–2271; Dec. Dig. ⬳261.]

At Law. Actions by Ellsworth C. Irvine, as receiver of the Columbus, Hocking Valley & Sandusky Railroad Company, against Fisher A. Baker and another, and against John W. Simpson and another. Motions of plaintiff and of defendants to direct verdict. Verdict directed for plaintiff in each case.

Baldwin & Hutchins and McLaughlin, Russell, Coe & Sprague, all of New York City (R. W. Sprague, Jr., of New York City, of counsel), for plaintiff.

John S. Montgomery, of New York City, for defendants Baker and others.

Simpson, Thatcher & Bartlett, of New York City (Thomas M. Day, of New York City, of counsel), for defendants Simpson and others.

GRUBB, District Judge. These actions were submitted for decision together. They are both actions by a receiver, appointed by an Ohio court to recover assessments made by that court, in proceedings there pending, upon the double liability of the testators under the Ohio Constitution and statutes as stockholders in an insolvent corporation.

The right of the receiver to recover is assailed upon these grounds: (1) The capacity of the plaintiff to maintain the action in a foreign jurisdiction. (2) Defects in the notice given the testators, or their personal representatives, of the pendency of the parent suit in Ohio. (3) The bar of the Ohio statute of limitations of 18 months. (4) The bar of the New York statute of limitations of six months, from the date of rejection of the claim by the personal representatives—this ground applies only to the case of Irvine v. Simpson et al. (5) The transfer and indorsement of the stock alleged to have occurred before the debts and the liabilities became enforceable against stockholders—this also applies only to the case of Irvine v. Simpson et al.

[1] First. Conceding that a statutory receiver vested with title, as distinguished from a mere receiver in chancery, may maintain an ac-

tion for the recovery of property in a court of a jurisdiction other than that which appointed him, the defendants contend that the Ohio statute and the orders of the Ohio court, appointing the receiver and authorizing him to sue, are singly or together insufficient to vest title in the plaintiff or to authorize him to sue in New York.

The authority of a receiver, appointed by a Minnesota court under a statute of that state, to enforce a similar liability against nonresident stockholders in the states of their domicile, was upheld by the Supreme Court in the cases of Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, and Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292. The language of the Ohio statute is not identical with that of the Minnesota statute, but it does empower receivers appointed by its courts to sue in other states to collect a stockholders' liability, assessed against nonresident stockholders by the Ohio court. The vesting of such authority in the receiver by the statute seems to be all that is required by the authorities. The right of this plaintiff, as receiver, to sue, has been sustained in the cases of Irvine v. Putnam (C. C.) 167 Fed. 174; Irvine v. Bankard (C. C.) 181 Fed. 206; Irvine v. Putnam (C. C.) 190 Fed. 321; Irvine v. Elliott (D. C.) 203 Fed. 82; and Blackburn v. Irvine, 205 Fed. 217, 123 C. C. A. 405. If there were doubt of the plaintiff's right to sue, it should be resolved in his favor by this court, in view of these numerous determinations of the federal courts. His authority to maintain the suit, under the power conferred upon him by the Ohio statute, without reference to the orders of the Ohio court, is reasonably clear, in view of the liberal construction in favor of an efficient remedy to enforce the statutory or constitutional liability, adopted by the Supreme Court in the two cases cited.

[2] Second. If the proceeding, which resulted in the assessment against the defendants, or their testators, was one of which they were required to be notified, and which could only proceed, as to them, while they were present in court, it is clear that the defendants in neither case were properly notified or personally present in court when the assessment was made.

It is settled that the personal notification and presence of the stockholder is not necessary, so far as the conclusiveness of the assessment is concerned, and apart from defenses personal to the stockholder, under statutes providing methods for the enforcement of such liability, unless the peculiar character of the statute requires it. Ordinarily the corporation represents the stockholders for such purposes, and the presence of the corporation is the presence of the stockholder for the purpose of the making of the assessment. Spargo v. Converse, 191 Fed. 823, 112 C. C. A. 337; Hamilton v. Simon (C. C.) 178 Fed. 130; Goss v. Carter, 156 Fed. 746, 84 C. C. A. 402; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; and Selig v. Hamilton, 234 U. S. 652, 34 Sup. Ct. 926, 58 L. Ed. 1518.

[3] The defendants contend that the Ohio statute, under which the parent suit in Ohio was instituted, was not of a character to admit of

a representation of stockholders by the corporation, and did not even require the corporation to be made a party defendant to the suit to declare and enforce the stockholders' liability. When the parent suit was commenced in 1899 in Ohio, section 3260, as amended March 22, 1894 (91 Ohio Laws, p. 88), of the Ohio Revised Statutes, regulated the procedure for the enforcement of stockholders' liability under the Ohio laws. It seems to have contemplated an action between the creditors of the corporation, on the one side, and all of its stockholders as personal defendants, upon the other, with no requirement that the corporation be a defendant in the suit. The system then in force seems to have excluded the idea of representation by the corporation of its stockholders, and to have contemplated the personal presence of such stockholders as were sought to be held liable. Nonresident stockholders could not, then, be reached either for the purposes of assessment or the enforcement thereof. If this statutory system had remained in force until the decree in the parent cause, it would seem doubtful whether the assessment therein decreed would have bound stockholders who were not personally served or who did not voluntarily appear in the parent suit.

The system was changed on April 16, 1900, by the adoption in Ohio of an act to amend section 3260. Section 3260, as then amended, provided a system of assessing the stockholders' liability of Ohio corporations similar to that adopted in Minnesota in 1899, and which was held in the case of Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, and the cases which followed it, to sustain an assessment against stockholders not present or served, upon the idea of their representation by the corporation of which they were members. It is clear, if the parent case in Ohio came under the amended system at the time the decree was rendered in it, that the defendants would be concluded by the assessment, though they had no notice of the proceeding and did not voluntarily appear in the parent case. They contend that, as the original proceeding was instituted under the old system and progressed to a final hearing without amendment to the pleadings bringing it expressly under the new system, it must be construed to have been conducted to a conclusion under the old system, and not to have been binding on the defendants, who were not served and did not appear.

It is to be observed that the third and concluding section of the act of April 16, 1900, provided that the act should apply to pending actions. The parent suit was then pending in the Franklin county court of common pleas. The Columbus, Sandusky & Hocking Railroad Company was served and had appeared in each of the proceedings which, by consolidation, formed the parent suit, and was a party defendant to the consolidated suit. It is true that it took no part in any of those suits, except to object to the service; but its failure to act was its own default, and it was charged with what was done within the issues, as were those represented by it. The issues from the beginning of the suit included the determination of the amount of the necessary assessment against stockholders.

In the case of Converse v. Hamilton, 224 U. S. 243, 256, 32 Sup.

Ct. 415, 418 (56 L. Ed. 749, Ann. Cas. 1913D, 1292), the Supreme Court said:

"While the order is made conclusive as against a stockholder, even although he may not have been a party to the suit in which it was made and may not have been notified that an assessment was contemplated, this is not a tenable objection, for the order is not in the nature of a personal judgment against the stockholder and as to him is amply sustained by the presence in that suit of the corporation, considering his relation to it and his contractual obligation in respect of its debts."

Prior to the amendatory act of April 16, 1900 (94 Ohio Laws, p. 359), it may be that the corporation did not and could not have represented its stockholders in the matter of the assessment of their liability. After the enactment of the amendatory act, it could, and legally did, by its mere presence in this suit, so represent them, since that act applied to pending actions. Nor would a change in the pleadings seem to be necessary to that end. The changed status of the corporation in the suit, after the amendment of section 3260, was not a matter to be accomplished by pleading, but was accomplished by the statute itself. By virtue of the terms of that act and its applicability to pending actions, the corporation, then—if it did not before—began to represent its stockholders for the purpose of the assessment.

That the Ohio court proceeded under the amended act, after its passage, is made clear by the fact that it appointed a receiver and sought to bring into the case as parties defendant, by publication, non-resident stockholders, for the doing of which there was no authority under the original section 3260. It is true that the corporation, though proceeded against from the start, was neither before nor after the amended statute proceeded against alone. The proceeding was against it and its stockholders, both resident and nonresident. It had a double aspect and a dual purpose. So far as its purpose was to declare the assessment, the presence of the corporation alone sufficed. So far as its purpose was to enforce the assessment, when declared, against each individual stockholder, whether resident or nonresident, it was necessary that the stockholders not only be made codefendants with the corporation, but that they be personally served with process or voluntarily appear in the case. It was possible that the nonresident stockholders might voluntarily appear in response to the published notice. In view of the second object to be attained by the parent suit, it cannot be said that the method of procedure adopted against the individual stockholders in the parent suit indicated that the new system, contained in the act of April 16, 1900, and applicable to the pending suit, was not adopted by the Ohio court in its conduct of the cause. To make the remedy effectual, the record will be construed as having followed the new remedy, if it can be reasonably done.

In the case of Bernheimer v. Converse, 206 U. S. 516, 531, 27 Sup. Ct. 755, 760 (51 L. Ed. 1163) the Supreme Court said of the Minnesota act of similar nature:

"It is obviously an act intended to make effectual the liability which is incurred by stockholders under the Constitution of the state, and it ought not to be rendered nugatory unless substantial objection exists against its enforcement."

The record in the parent suit has been construed by federal courts as having been conducted under the amendatory act, which made the personal service or voluntary appearance of the stockholder unnecessary and made the corporation their representative as far as the assessment was concerned. This settled construction should be now departed from, in this court, only for good reason. The cases of Irvine v. Putnam (C. C.) 167 Fed. 174, Irvine v. Putnam (C. C.) 190 Fed. 321, and Irvine v. Elliott (D. C.) 203 Fed. 82, all expressly held that the corporation represented its stockholders in the parent suit in Ohio and that personal service or voluntary appearance was for that reason unnecessary. The cases of Irvine v. Bankard (C. C.) 181 Fed. 206, Irvine v. Church & Co. (Eastern District of New York) 227 Fed. ——, and Blackburn v. Irvine, 205 Fed. 217, 123 C. C. A. 405, by sustaining the assessment, impliedly so held. The overruling of the demurrer in the case at bar also is inconsistent with defendants' contention in this respect.

[4] The defendants distinguish the Ohio statute, which directs the giving of notice to nonresident stockholders, from the Minnesota act, which it is claimed does not require the giving of notice, and so seek to distinguish the cases decided by the Supreme Court under the Minnesota act from those arising under the Ohio act. The distinction sought to be drawn fails for these reasons. The Minnesota act does direct the giving of such notice of the hearing as the court in its discretion may designate. The Minnesota court in the Minnesota cases did direct the giving of notice of the hearing to stockholders, who lived out of the state. The direction of the Ohio statute was therefore no more imperative than that of the Minnesota statute, re-enforced by the decree of the Minnesota court directing notice to be given. The Supreme Court sustained the assessment of the Minnesota court because it held that the stockholders were represented by the corporation and that the matter of notice, whether required or not, was therefore of no consequence to the validity of the assessment. It is quite clear, if the Ohio statute suffices to make the corporation the representative of its stockholders for the purpose of making the assessment, then all stockholders are in court for that purpose, without notice, service, or appearance, and the want of proper notice to nonresidents cannot be material upon the validity of the assessment decree. The Ohio statute has a dual purpose. It seeks (1) to declare and (2) to enforce the assessment. The first purpose may be amply accomplished in the absence of the stockholder, if the corporation be present. The second purpose can be accomplished only when the stockholder is present or has been served. The Ohio statute requires personal service on resident stockholders and notice by publication to nonresident stockholders for the purpose of accomplishing the second—not the first—of the two objects. If a stockholder is served or appears, the assessment, as to him, may not only be declared, but enforced, in the parent suit. The failure to serve or notify a stockholder does not affect the right of the court to declare the assessment, but only its right to proceed to collect the assessment when declared in the parent suit against such stockholder. The failure to personally notify the de-

fendants in the parent suit made it necessary, in order to collect the assessment, to sue them in the ancillary suits brought by the receiver in New York, but did not affect the validity of the assessment decree, even as to them. Inasmuch as no notice was essential to the validity of the assessment in the parent suit, the defendant corporation representing its stockholders in that behalf, and, its presence sufficing to the court's jurisdiction to assess its stockholders, no irregularity or insufficiency in the notice actually given in either of the cases submitted for decision can avail to avoid the judgment declaring the assessment.

[5] Third. The 18 months' statute of limitations of Ohio, in connection with section 390a of the Civil Code of New York, is pleaded in the suits by the receiver to enforce the assessment in New York. The defendants rely upon the decision of the Court of Appeals in New York in the case of Shipman v. Treadwell, 208 N. Y. 404, 102 N. E. 634. The plaintiff relies upon the case of Blackburn v. Irvine, 205 Fed. 217, 123 C. C. A. 405, decided by the Circuit Court of Appeals for the Third Circuit, and the unreported case of Irvine v. McCoy, decided by the common pleas court of Franklin county, Ohio, affirmed by the Ohio Court of Appeals, and intermediate appellate court, from whose judgment of affirmance a writ of certiorari was denied by the Supreme Court of Ohio.

The question for decision is whether the Ohio act of April 29, 1902 (95 Ohio Laws, p. 312), which provides that "an action upon the liability of stockholders can only be brought within eighteen months after the debt or obligation, shall become enforceable against stockholders," applies to an action brought by a receiver to enforce an assessment against an individual nonresident stockholder, or only to the parent suit in which the assessment is declared. If it were held to apply to the initial suit, generally, it could not apply to the parent suit in this case, since the Ohio act was not passed till after the parent suit was instituted, and no time would have been allowed for the bringing of the suit within the 18 months; that period having already elapsed before the statute was enacted.

It seems to be established that the statute of Ohio is a statute of limitations which is pleadable in New York by virtue of the cited section of the New York Civil Code. Being an Ohio statute, the benefit of which merely is allowed persons sued in New York by the law of New York, it would be adopted into New York with the construction placed upon it in Ohio by its court of last resort, if there had a settled construction. The Supreme Court of Ohio has passed upon the question only by denying the application for a writ of certiorari to the Court of Appeals from a judgment of that court, affirming a judgment of the common pleas court of Ohio, holding that the 18 months' statute did not apply to an ancillary suit by a receiver. The cases of Shipman v. Treadwell, supra, and Blackburn v. Irvine, supra, were cited in the Court of Appeals opinion on affirmance, and the conflict between these cases was relied upon in applying for the certiorari. The New York case was decided before the Ohio case, and the New York court did not have that case before it when it decided the case of Shipman v. Treadwell, supra. As a matter of authority, in view

of the fact that the statute is a local statute of Ohio, it seems that the Ohio case and the case of Blackburn v. Irvine, supra, expressing the view of a federal appellate court, should be followed, rather than the New York case.

[6] The act itself provides (section 3258a) that:

"An action upon the liability of stockholders can only be brought within eighteen months after the debt or obligation shall become enforceable against stockholders."

If the words "shall become enforceable against stockholders" refer to the time of the declaration of an assessment, the limitation could, of course, apply only to the action by a receiver to enforce the assessment. Section 3258, as amended April 29, 1902, provides that:

"The stockholders of a corporation who are the holders of its shares at a time when its debts or liabilities are enforceable against them, shall be deemed and held liable," etc.

The same words "enforceable against them" are used in section 3258 in declaring the liability and in section 3258a in prescribing the limitation, and in the same act. They were doubtless used in the same sense and are to be so construed. In section 3258, declaring the stockholders' liability, these words must refer to the time when the corporation becomes insolvent and unable to satisfy its creditors except by resort to the additional liability of its stockholders. If the words, as used in section 3258, be construed to refer to the date of the assessment, the statute would be useless, since stockholders would transfer their shares before the declaration of the assessment by the court and so escape liability on them. If the words are not to be given this significance in section 3258, they should not be given a like meaning when used in section 3258a. If they there mean the date of declared corporate insolvency, rather than the date of actual assessment, the limitation must be held to apply only to the parent suit, since the ancillary suit cannot be brought until after the final assessment, and the interval between declared insolvency and the date of the, final assessment would itself likely exceed a period of 18 months, though the parent suit were properly brought and diligently prosecuted.

The amendatory act of April 29, 1902, relates only to the declaration of the stockholders' liability, and not to any method for its enforcement. It contains no provision for the appointment of a receiver or authorization of suits by a receiver in foreign or domestic jurisdictions. The Legislature's attention was then fixed only upon the general liability of the stockholder, and the limitation should be held to apply to the general liability, rather than to a specific remedy against stockholders not served or appearing in the parent suit. The subject-matter of the amendatory act did not relate to ancillary suits by receivers at all.

Section 3258 was re-enacted and amended on April 25, 1904 (97 Ohio Laws, p. 390), together with section 3258a. In the latter the words "under the last preceding section" were inserted, referring to section 3258, which provides only for the general liability of all stockholders, as it did originally. Section 3258a, was codified in the General Code of

Ohio of 1910 as section 8688. It contained the words "under the two next preceding sections." Section 3258 had been divided into two sections, numbered 8686 and 8687. The repetition of this language indicated the purpose of the Legislature to apply the limitation prescribed by section 8688 to the liability declared by sections 8686 and 8687, as before. Section 8695, following section 8688, is the first section of the revision that refers to the authority of a receiver to sue to collect the amount found due from a stockholder. The arrangement of the sections and the comparative positions of sections 8686 and 8687 with 8688, on the one hand, and with section 8695, on the other, show that the limitation contained in section 8688 related to the general liability as declared in sections 8686 and 8687, rather than to the specific and partial remedy provided by section 8695. The Legislature was content to leave the matter of the period of limitation in suits brought by receivers in other jurisdictions to the local applicable statutes of the states in which the suits were brought. In re-enacting the double liability as to past transactions, which had been abolished as to future transactions by the constitutional amendment of November, 1903, the Legislature, following the policy of the state indicated by the constitutional amendment, not being able to affect the right, placed severe restrictions upon the remedy as to the time within which it was to be exercised.

[7] Fourth. Reliance is placed by the defendants in the case of Irvine v. Simpson et al., upon section 1822, New York Code of Civil Procedure, which provides that suit upon a claim against the estate of a decedent, which has been disputed or rejected by an executor or administrator, must be brought within six months from the date of such dispute or rejection. This defense is based on correspondence between the receiver and the firm of Simpson, Thatcher & Bartlett, attached to the stipulation. This correspondence occurred in the year 1908, after the assessment had been declared in the Franklin common pleas court and set aside in the circuit court and a new assessment in double the amount then declared. This last assessment was set aside by the Supreme Court of Ohio and the original assessment declared by the common pleas court reinstated on May 11, 1909. The claim presented to the executors and said to have been rejected was based on the 50 per cent. assessment of the circuit court of Franklin county.

It may admit of doubt whether the correspondence shows a rejection of the claim presented by the receiver. There is also a question raised as to whether the 50 per cent. assessment, and the 25 per cent. assessment constituted one and the same claim, so that the rejection of the former would be the rejection of the latter. At the time of the presentation in 1908 and of the alleged rejection, there was no final assessment in any amount existent. The case was pending on appeal to the Supreme Court, which afterwards set aside the 50 per cent. assessment made by the circuit court, and confirmed the 25 per cent. assessment of the common pleas court. This was in May, 1909, and prior to this there was no final assessment. It is conceded that no suit to collect the assessment could have been instituted until the as-

sessment was made final by the Supreme Court of Ohio, which was May 11, 1909. Any presentation of the claim until that time would have been premature, and no rejection by the executors before that time could have set the six months'.statute of limitations in operation. No suit could have been instituted prior to May 11, 1909, on the assessment. The statute of limitations would not begin ·to run at a time when no suit could have been brought to enforce the assessment. The rejection contemplated by section 1822, New York Code of Civil Procedure, is one made at a time when suit could have been instituted, immediately after it occurred, by the claimant. Otherwise, the six months' period after the claim was rejected might elapse before the claimant was in a legal position to sue·on the assessment. The commencement of the running of the statute cannot antedate the right to sue. A rejection of a kind to put the statute in operation must be one that would authorize the immediate bringing of a suit. ˙Such a rejection in this case could not have occurred earlier than May 11, 1909, when. a final assessment on which suit could be brought first came into existence. The only rejection relied upon, however, occurred prior to that date, and was, for that reason, insufficient to put the six months' statute in operation.

[8] Fifth. The defendants Simpson and Thatcher also rely on a transfer of the stock owned by their testator made by them on February 21, 1905, to R. M. Smythe, and the acts of the General Assembly of Ohio amending section 3258 of the Revised Statutes of Ohio, enacted April 29, 1902, and April 24, 1904, respectively. These acts contain this provision:

"And no stockholder, who shall transfer his stock in good faith, and such transfer is made on the books of the company or on the back of the certificate of stock, properly witnessed or tendered for transfer on the books of the company, prior to the time when such debts and liabilities are so enforceable, shall be held to pay any portion thereof." .

The question in this case is whether the debts and liabilities had become enforceable as against stockholders before February 21, 1905, the date of the transfer by the executors of Moore of the stock owned by their testator. If the debts of the corporation first became enforceable against the stockholders when the assessment was declared, either in the lower court or in the Supreme Court, the transfer was in time to bring the case within the exemption of the statute. If, however, the debts and liabilities of the corporation became enforceable against stockholders upon the insolvency of the corporation, in such sense as that resort to the stockholders' additional liability was necessary to satisfy corporate debts, then the transfer occurred after the debts and liabilities of the corporation became enforceable against stockholders. Insolvency of the corporation in the sense necessary had occurred as early as June 2, 1897, when the foreclosure proceedings were instituted in the Ohio court and a receiver appointed in them. The question depends upon the meaning to be given the words "when such debts and liabilities are so enforceable," in the acts of 1902 and 1904, amending section 3258 of the Ohio Revised Statutes. These

words in the proviso evidently refer back to the same words where they first occur in the respective acts.

[9] The additional liability of stockholders, which was created by the Constitution and laws of Ohio, was a secondary and contingent liability. It became a primary one and enforceable against stockholders upon the insolvency of the corporation, having assets, including unpaid stock subscriptions, insufficient to satisfy its debts. The first step, looking to the enforcement of the additional liability of stockholders under the Ohio law, is the proceeding to fix the assessment. The fixing of the assessment is by its nature a step to enforce the liability. It is as essential to that end as are the subsequent proceedings to collect the assessment, when fixed. Until the amount of the liability of each stockholder is determined by the assessment, no enforcement of collection is possible. The parent suit in Ohio had two purposes: First, as to all stockholders, the determination of their liability and its amount by an assessment; and, second, as to stockholders personally served or voluntarily appearing, the collection of the amount due from them, as fixed by the assessment. Against stockholders not served or appearing, the second step for the enforcement of the liability could not be taken in the parent suit. The stockholder is not concluded as to certain personal defenses by a decree obtained in his absence and without service. As to such defenses he is not represented by the presence of the corporation in the proceeding. For this reason, the amended statutory system provided for a receiver and empowered the receiver to bring suit against stockholders, who were not served and had not appeared in the parent suit, in the jurisdiction of their respective domiciles where service could be obtained. These ancillary suits constituted the second step to enforce the liability in case of stockholders not so reached in the parent suit.

While it is true that actual collection of the liability in the parent suit could not be had, nor suits for that purpose be instituted by the receiver, until after a final assessment was had, and that the statute of limitations as against such independent suits would not begin to run until the suit could be legally commenced, which would be only after the date the assessment was made final, yet it does not follow that the liability against the stockholders first became enforceable at the date of the final assessment. If the fixing of the assessment is but a step towards the enforcement of the liability, then the liability must have become enforceable before the assessment was fixed. If it became enforceable before the final assessment, then it must have become enforceable at the time the debts and liabilities ceased to be secondary obligations of the stockholders and became their primary obligations, and this was the date of the insolvency of the corporation. So long as the liability continued a contingent one, it was not an enforceable one. When it ceased to be contingent and became fixed and absolute against stockholders, it immediately became enforceable against them, subject to future liquidation as to amount by assessment. The necessity for liquidating the amount before it could be collected from the stockholder did not postpone the time when the liability became enforceable, but only made necessary a preliminary

step before its collection was possible; and this preliminary step was itself taken for the purpose of enforcing the liability.

The words "after the debt or obligation (or liability) shall become enforceable against stockholders" are used several times in the acts of 1902 and 1904, and should be construed the same way in each instance. The more reasonable construction in each instance would seem to be to give to these words the meaning here attributed to them, i. e., the time when the debts and obligations of the corporation became the primary and fixed liabilities of the stockholders, rather than the time of the fixing of the amount of such liability of each stockholder. Adopting this construction, the date of insolvency, and not the date of final assessment, would determine when the debts and obligations of the corporation became enforceable against the stockholders of the corporation. At the date of the declared and confessed insolvency of the corporation, June 2, 1897, no transfer of the shares owned by defendants' testator had been made by the testator or by his personal representatives.

[10] Other criticisms of the assessment are relied upon in the memorandum of defendants, but they constitute only nonjurisdictional irregularities, which cannot avail to impair the validity of the assessment upon this collateral attack, and need not be further considered. Irvine v. Elliott (D. C.) 203 Fed. 82; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163.

The plaintiff is entitled to a judgment in each case for the agreed amount, and a verdict therefor is directed.