## SERE AND LARALDE *v.* PITOT AND OTHERS.

A general assignee of the effects of an insolvent cannot sue in the federal courts, if his assignor could not have sued in those courts.

The citizens of the territory of Orleans
ERROR to the district court of the United States for the district of Orleans, in a suit in equity, in which *Sere & Laralde* were *complainants*, against *Pitot and others*, defendants.

The complainants stated, that they were *aliens*, and syndics of the creditors of the joint concern of Dumas & Janeau, Pierre Lavergne and Joseph Faurie; that Faurie died insolvent; that Dumas & Janeau were

also insolvent, and made a surrender of all their effects to their creditors, and that Lavergne acknowledged himself to be unable to pay the debts of the joint concern; that the joint concern, as well as the individual members, being insolvent, " application was made by their creditors to the superior court of the territory of Orleans, and such proceedings were thereupon had that, according to the laws of the said territory, the complainants were, at a meeting of the creditors of the said partnership, duly nominated syndics for the said creditors, and, *by the laws of the said territory, all the estete, rights and credits of the said partnership were vested in the complainants.*" They also stated that the defendants were citizens of the *United States.*

SERE
v.
PITOT.

may sue and be sued in the *district* court of that territory in the same cases in which a citizen of Kentucky may sue and be sued in the court of Kentucky.

The defendants pleaded to the jurisdiction, and the court below allowed the plea.

*E. Livingston,* for the plaintiffs in error, contended,

1. That the eleventh section of the judiciary act of 1789 did not apply to those assignees to whom the *choses in action* of an insolvent were transferred by operation of law, as in the case of executors and administrators. 4 *Cranch,* 306. *Chappedelaine* v. *Decheneau;* and,

2. That under the third article of the constitution of the United States, and the judiciary act of 1789, it was sufficient to aver one of the parties to be a citizen of the United States, generally, if the other party were an *alien.* It is to be presumed that he was a citizen of some one of the states.

*Harper,* contra.

The judiciary act is express in prohibiting a suit in the federal court by an assignee, if the suit could not have been maintained between the original parties. The expression is general, " *or other chose in action,*" which comprehends the present case.

By the constitution, if one party be an alien, the

other must be a citizen of *one of the states;* it is not sufficient that he be a citizen of one of the *territories* of the United States.

The case of *Chappedelaine* was that of an administrator; this is of a mere assignee.

*Livingston,* in reply.

The act of congress speaks of recovering the *contents* of a *chose in action,* evidently referring only to cases of individual assignments of particular *choses in action,* not to a general assignment of all his effects by an insolvent.

*March 17.*

MARSHALL, Ch. J. delivered the opinion of the court as follows, viz.

This suit was brought in the court of the United States for the Orleans territory, by the plaintiffs, who are aliens, and syndics or assignees of a trading company composed of citizens of that territory, who have become insolvent. The defendants are citizens of the territory, and have pleaded to the jurisdiction of the court. Their plea was sustained, and the cause now comes on to be heard on a writ of error to that judgment.

Two objections are made to the jurisdiction of the district court.

1. That the suit is brought by the assignees of a *chos in action* , in a case where it could not have been prosecuted, if no assignment had been made.

2. That the district court cannot entertain jurisdiction, because the defendants are not citizens of any state.

The first objection rests on the 11th section of the judicial act, which declares " that no district or circuit court shall have cognisance of any suit to

cover the contents of any promissory note, or other *chose in action*, in favour of an assignee, unless a suit might have been prosecuted in such court, to recover the said contents, if no assignment had been made."

The plaintiffs are admitted to be the assignees of a *chose in action;* but it is contended that they are not within the meaning of the provision which has been cited, because this is a suit for cash, bills and notes, generally, by persons to whom the law transfers them, and not by such an assignee as is contemplated in the judicial act. The words of the act are said to apply obviously to assignments made by the party himself, on an actual note, or other *chose in action,* assignable by the proprietor thereof, and that the word " contents" cannot, by any fair construction, be applied to accounts or unliquidated claims. Apprehensions, it is said, were entertained that fictitious assignments might be made to give jurisdiction to a federal court, and, to guard against this mischief, every case of an assignment by a party holding transferable paper, was excepted from the jurisdiction of the federal courts, unless the original holder might have sued in them.

Without doubt, assignable paper, being the *chose in action* most usually transferred, was in the mind of the legislature when the law was framed; and the words of the provision are therefore best adapted to that class of assignments. But there is no reason to believe that the legislature were not equally disposed to except from the jurisdiction of the federal courts those who could sue in virtue of equitable assignments, and those who could sue in virtue of legal assignments. The assignee of all the open accounts of a merchant might, under certain circumstances, be permitted to sue in equity, in his own name, and there would be as much reason to exclude him from the federal courts, as to exclude the same person, when the assignee of a particular note. The term " other *chose in action*" is broad enough to comprehend either case; and the word " contents," is too ambiguous in its import, to restrain that general term. The " contents" of a note are the sum it shows to be due;

and the same may, without much violence to language, be said of an account.

The circumstance, that the assignment was made by operation of law, and not by the act of the party, might probably take the case out of the policy of the act, but not out of its letter and meaning. The legislature has made no exception in favour of assignments so made. It is still a suit to recover a *chose in action* in favour of an assignee, which suit could not have been prosecuted if no assignment had been made; and is therefore within the very terms of the law. The case decided in 4 *Cranch*, was on a suit brought by an administrator, and a residuary legatee, who were both aliens. The representatives of a deceased person are not usually designated by the term " assignees," and are, therefore, not within the words of the act. That case, therefore, is not deemed a full precedent for this.

It is the opinion of the court that the plaintiffs had no right to maintain this suit in the district court against a citizen of the Orleans territory, they being the assignees of persons who were also citizens of that territory.

It is of so much importance to the people of Orleans to decide on the second objection, that the court will proceed to consider that likewise.

Whether the citizens of the territory of Orleans are to be considered as the citizens of a state, within the meaning of the constitution, is a question of some difficulty which would be decided, should one of them sue in any of the circuit courts of the United States. The present inquiry is limited to a suit brought by or against a citizen of the territory, in the district court of Orleans.

The power of governing and of legislating for a territory is the inevitable consequence of the right to acquire and to hold territory. Could this position be contested, the constitution of the United States de-

clares that " congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." Accordingly, we find congress possessing and exercising the absolute and undisputed power of governing and legislating for the territory of Orleans. Congress has given them a legislative, an executive, and a judiciary, with such powers as it has been their will to assign to those departments respectively.

The court possesses the same jurisdiction which was possessed by the court of Kentucky. In the court of Kentucky, a citizen of Kentucky may sue or be sued. But it is said that this privilege is not imparted to a citizen of Orleans, because he is not a citizen of a state. But this objection is founded on the idea that the constitution restrains congress from giving the court of the territory jurisdiction over a case brought by or against a citizen of the territory. This idea is most clearly not to be sustained, and, of consequence, that court must be considered as having such jurisdiction as congress intended to give it.

Let us inquire what would be the jurisdiction of the court, on this restricted construction.

It would have no jurisdiction over a suit brought by or against a citizen of the territory, although an alien, or a citizen of another state might be a party.

It would have no jurisdiction over a suit brought by a citizen of one state, against a citizen of another state, because neither party would be a citizen of the " state" in which the court sat. Of what civil causes, then, between private individuals, would it have jurisdiction ? Only of suits between an alien and a citizen of another state who should be found in Orleans. Can this be presumed to have been the intention of the legislature in giving the territory a court possessing the same jurisdiction and power with that of Kentucky.

The principal motive for giving federal courts jurisdiction, is to secure aliens and citizens of other

states from local prejudices. Yet all who could be affected by them are, by this construction, excluded from those courts. There could scarcely ever be a civil action between individuals of which the court could take cognisance, and if such a case should arise, it would be one in which no prejudice is to be apprehended.

. It is the unanimous opinion of the court that, by a fair construction of the act, the citizens of the territory of Orleans may sue and be sued in that court in the same cases in which a citizen of Kentucky may sue and be sued in the court of Kentucky.

Judgment affirmed with costs.