[Cite as *State v. Cox*, 2018-Ohio-1938.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                            :

    Plaintiff-Appellee,                            :

                                      No. 17AP-619
v.                                                       :        (C.P.C. No. 15CR-213)

Shaniece M. Cox,                                         :        (REGULAR CALENDAR)

    Defendant-Appellant.                          :

---

D E C I S I O N

Rendered on May 17, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Shaniece M. Cox, appeals an entry of judgment reflecting conviction of possession of heroin and tampering with evidence having been found guilty by a jury and an overall sentence of four years in prison for these crimes. Cox also challenges pretrial decisions of the trial court not to suppress incriminatory statements she made to the police and physical evidence recovered from her purse by the police. Because Cox was read the requisite *Miranda*[1] warnings and because she volunteered that she had contraband in her purse, we find that her voluntary statements and the fruits of the related search were lawfully admitted into evidence at trial. We also find that her convictions were sufficiently supported by the evidence and not contrary to the manifest weight of the evidence. Accordingly, we affirm.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   On January 16, 2015, a Franklin County Grand Jury charged Cox and a co-defendant, Kareem Jones, with possession of heroin and tampering with evidence. (Jan. 16, 2015 Indictment.)  The indictment included a one-year firearm specification for the possession charge.  *Id.*

{¶ 3}   The defense filed motions to suppress on December 1, 2015 and May 19, 2017 seeking exclusion of statements made by Cox to police and (in the second motion only) exclusion of physical evidence recovered by the police from Cox's purse.  (Dec. 1, 2015 Mot. to Suppress; May 19, 2017 Mot. to Suppress.)  The trial court held two hearings on the motions, one on July 12, 2016 and one on May 23, 2017.  At both hearings, Ohio State Highway Patrol ("OSHP") Trooper, Kristi Comstock, testified and a video of the interaction between Cox and Comstock was shown in court to the trial judge.  (Tr. at 7-26, 37-50, filed Sept. 1, 2017; Defense's Ex. 1.[2])  At the second hearing, another OSHP Trooper, Christopher Jackson, also testified.  (Tr. at 50-84.)

{¶ 4}   Jackson testified that on August 5, 2014, shortly after midnight, he attempted to stop a car for speeding in a construction zone.  *Id.* at 51-53.  He testified that the car did not stop when he activated his lights, and instead turned off the freeway and proceeded into downtown Columbus.  *Id.* at 52-53.  At some point during the chase, he saw someone throw either one or two pistols from the moving car (his testimony varied somewhat between the suppression hearing and trial as to what he remembered actually seeing versus what he inferred from the fact that two pistols were recovered from the side of the road).  *Id.* at 53-54, 136-39, 162-65.  Officer Jackson explained that while arresting the driver, Jones, he found a large sum of money in Jones' pocket.  *Id.* at 65.  He testified that he was not involved in securing Cox but is aware that her purse, which was located in the back seat of the car, was searched and a second large sum of money and two bags of heroin were found.  *Id.* at 58-59.  He also mentioned that the car was towed because neither Cox nor Jones was the

---

[2] Defense's exhibit No. 1 is the full-length video from Trooper Comstock's cruiser.  It was proffered but not formally admitted at trial.  Yet portions of the full-length video were not included in the excerpted video exhibit that the State formally introduced at trial notwithstanding the fact that they were shown in court to the trial judge during the suppression hearings.  *Compare* Defense's Ex. 1 *with* State's Ex. E.  Thus, despite the fact that defense's exhibit No. 1 was not formally admitted at trial, and despite the fact that neither party has assigned an error for failure to admit it into evidence, we consider it reasonable to cite defense's exhibit No. 1 where necessary to establish the facts that were before court, especially as to the pretrial suppression issues.

owner of the vehicle and he was unable to verify that either had the owner's permission to operate it. *Id.* at 58.

{¶ 5} Comstock testified that she arrived after the chase was over and helped secure the suspects as well as to search them and the car. *Id.* at 7-8. She testified that Cox was handcuffed by unknown members of the Columbus Police Department and placed in the back of her patrol car. *Id.* at 8-11. Her testimony varied somewhat about whether Cox was asked any questions before being read the *Miranda* warnings. *Id.* at 25, 39-40. Video from her cruiser (which was played during the suppression hearings) reveals that before the *Miranda* warnings were given, Columbus police officers told Comstock that Cox had "weed" in her purse, whereupon, Cox volunteered that she had "weed" in the car and her purse. (State's Ex. E at 00:17:58-00:18:13; Tr. at 9-10.) Based on what Comstock claimed were safety reasons, Comstock questioned Cox about whether she had anything "stuffed down in" her (to which Cox responded negatively). (State's Ex. E at 00:18:00-00:18:13; Tr. at 39-40.) Comstock also asked some identifying questions of Cox. (State's Ex. E at 00:18:41-00:18:51.) Cox responded to questions about her identification by volunteering that her identification was in her purse. *Id.* Then the video reflects (and Comstock testified) that she read Cox the *Miranda* warnings and Cox verbally said that she understood her rights. (Tr. at 12-13; Defense's Ex. 1 at 00:27:00-00:27:46.)

{¶ 6} The parties stipulated that immediately after reading Cox the *Miranda* warnings, no significant questioning took place until approximately one hour later. (Tr. at 43.) As Comstock drove Cox to the OSHP trooper post, she interviewed Cox. (Defense's Ex. 1 at 01:32:59-01:41:48.) During the drive, Cox told Comstock that Jones fled from the police because she told him to. (State's Ex. E at 01:32:59-01:33:22.) Cox explained that she was scared because she had all her money with her and had her guns with her. *Id.* at 01:33:40-01:35:08. She also stated that Jones knew nothing about these items. *Id.* In a portion of the video not introduced at trial but proffered in defense's exhibit No. 1, when questioned about drugs, Cox appeared completely unaware that heroin was found in her purse. (Defense's Ex. 1 at 01:38:40-01:41:48.) She said that the only drug she consumed was "weed" and stated that she told officers about the "weed" in her purse. *Id.* at 01:38:40-01:39:27. Though the audio portion of the video is hard to discern, it appears that shortly thereafter, Cox stated that Jones used heroin. *Id.* at 01:39:27-01:40:00. Just before

entering the post, Comstock asked Cox if there was anything illegal in her purse. *Id.* at 01:41:30-01:41:36. Cox responded that there was nothing else illegal in her purse and the police could check and even "rip it up" to see for themselves. *Id.* at 01:41:35-01:41:48.

**{¶ 7}** The trial court orally denied both motions to suppress at the end of each hearing and trial of the case began on June 12, 2017. (Tr. at 32-33, 83.) At trial, the video was again shown in court, this time, in some relevant parts, and five witnesses testified. *See, e.g.*, *id.* at 145, 149, 191, 203-36. Two expert witnesses provided testimony that can be briefly summarized: The first was a crime lab scientist who determined that the substance found in two packages in Cox's purse was a total of approximately 49 grams of heroin. (Tr. at 249-50; State's Ex. A2.) The second expert was an officer who determined that the two pistols recovered from the chase scene were operable. (Tr. at 275-82; State's Exs. B2, C2.) This witness also testified that in 2014, heroin sold for approximately $1,100 per ounce and that an ounce is 28 grams. (Tr. at 282.) The three remaining witnesses who testified for the State at trial were Jackson, Comstock, and an OSHP supervisor who witnessed Cox write a statement at the OSHP post.

**{¶ 8}** Jackson and Comstock testified to approximately the same facts (albeit in more detail) that they related during the suppression hearings. Jackson testified that he was on patrol on August 5, 2014, when he saw a speeder, engaged in a short chase, observed a gun thrown from the car, and ultimately stopped the speeder. (Tr. at 117-29.) He confirmed that two pistols were found along the pursuit path of the car, that heroin was recovered from Cox's purse, that approximately $2,000 was found in Jones' pocket, and that approximately $6,000 was found in Cox's purse. *Id.* at 136-44. He acknowledged that he could only remember seeing one pistol thrown from the passenger side of the vehicle but his written report noted that another was thrown also. *Id.* at 162-65. He admitted that the car he was pursuing had window tint preventing him from seeing what was going on inside the car. *Id.* at 172. He agreed that the passenger side window of the fleeing car could have been rolled down using the driver's side window controls. *Id.* at 182. He confirmed that neither Cox nor Jones was the registered owner of the car and that three small baggies of marijuana were recovered from the floorboards of the vehicle. *Id.* at 180-81, 185.

**{¶ 9}** Comstock testified that she responded to the scene of the stop following a radio call from Jackson. *Id.* at 202-03. She reported that Cox said she had "weed" in her

purse and invited officers to retrieve her identification from the purse. *Id.* at 208-10. Comstock recounted that in her search of the purse she found heroin and a large amount of cash, not "weed." *Id.* at 208, 212-14, 217. However, she admitted that marijuana was found on the floorboards of the car. *Id.* at 214.

{¶ 10} The final fact witness for the State, the OSHP supervisor who witnessed Cox giving a statement at the OSHP post, testified that he was summoned to the scene of the pursuit on August 5, 2014 at approximately 1:00 a.m. *Id.* at 252-53. He testified that, in the course of supervising his officers, he met Cox at the stop and then participated in an interview of Cox back at the OSHP post. *Id.* at 254. During this interview he witnessed Cox write the statement appearing in state's exhibit H. *Id.* at 254-57. However, he admitted that neither Cox nor any interviewing officer signed the statement and he did not watch her write the entire thing. *Id.* But he said that when he was intermittently in the interview room he saw her working on writing it. *Id.* That statement, which was read into evidence, is:

> I was leaving the apartment 6043 Lakeclub pl. gathered all my things and once I left the apartment that my boyfriend picked me up from we where on our way to his sisters house. And thats when the cops got behind us I had 2 weapons witch was from my apartment that I had for protection. My boyfriend didn't know I had it So I told him to keep drivin and thats when I threw the fire arms out the window cause I was scared very scared and my boy friend new nothing about it until I threw them out. The money was mines that I have been saving up. Had to take it with me when I moved out the apartment I had no bank account.

(Sic passim.) (State's Ex. H); *see also* Tr. at 258-59.

{¶ 11} During closing, the defense argued that the heroin, money, and guns belonged to Jones and that he had, unbeknownst to Cox, hidden the heroin and some cash in her purse during the pursuit and had, himself, flung the guns from the car since they were too big for him to hide in the purse. (Tr. at 325-40.) The prosecution argued that whether the heroin and guns were Cox's or whether she was hiding and trying to dispose of them for Jones, she was guilty either as a primary violator or as an aider and abettor. *Id.* at 323, 344.

{¶ 12} After approximately one-half day of deliberating, the jury indicated that it was "unable to reach a unanimous verdict" on the heroin possession count. (Tr. at 366.)

The trial court orally instructed the jury on the record, "I really don't think you've deliberated long enough to really give up." *Id.* The trial court then declared a recess. *Id.* On the afternoon of the following day, July 16, 2017, the jury announced a verdict of guilty on all charges and specifications. *Id.* at 368-74.

{¶ 13} Approximately three weeks later, on August 4, 2017, the trial court held a sentencing hearing. *Id.* at 381. The trial court considered that Cox had no prior criminal record and a low chance of recidivism but also that Cox apparently shielded Jones from criminal liability by "taking the blame for all this." *Id.* at 392. It then sentenced Cox to three years for possession of heroin plus a consecutive one-year gun specification and two concurrent years on the tampering with evidence charge for a total of four years in prison. *Id.*

{¶ 14} Cox now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Cox assigns three errors for review:

> I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HER GUILTY OF AGGRAVATED POSSESSION OF DRUGS AND TAMPERING WITH EVIDENCE AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HER MOTION TO SUPPRESS EVIDENCE.
>
> III. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING HER MOTION TO SUPPRESS HER STATEMENTS.

We address these out of order.

## III.  DISCUSSION

### A.  Standard of Review for Decisions on Motions to Suppress

{¶ 16} In reviewing a decision on a motion to suppress, we afford deference to the trial court's factual determinations and review its recitation of historical facts for "clear error," but we review statements of law and the application of law to facts de novo. *See,*

*e.g., Ornelas v. United States*, 517 U.S. 690, 699 (1996); *In re A.J.S.*, 120 Ohio St.3d 185, 2008-Ohio-5307, ¶ 50; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 17} For ease of discussion, we begin by considering the third assignment of error, whether the trial court erred in refusing to suppress Cox's statements to the police.

## 1. Third Assignment of Error – Whether the Trial Court Erred in Refusing to Suppress Cox's Statements to Police

{¶ 18} In 1966, the United States Supreme Court held:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). In this case, although the video shows that Cox's rights were read to her rather quickly, there is no dispute that they were read to her and that she responded that she understood. (Tr. at 12-13; Defense's Ex. 1 at 00:27:00-00:27:46.) And Cox does not argue that she was asked any improper questions before Comstock read her the *Miranda* warnings. (Cox's Brief at 6-9.) Rather, Cox argues that by the time she was questioned by Comstock on the way to the OSHP post and later when she was questioned within the post, the initial *Miranda* warnings had become stale and should have been readministered. *Id.*

{¶ 19} Generally speaking, "[p]olice are not required to readminister *Miranda* warnings to a suspect when a relatively short period of time has elapsed since the initial

warnings."  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 119, citing *State v. Treesh*, 90 Ohio St.3d 460, 470 (2001).  Exceptions to this general principle are weighed in Ohio by considering five factors:

> "(1) [T]he length of time between the giving of the first warnings and subsequent interrogation, * * * (2) whether the warnings and the subsequent interrogation were given in the same or different places, * * * (3) whether the warnings were given and the subsequent interrogation conducted by the same or different officers, * * * (4) the extent to which the subsequent statement differed from any previous statements; * * * [and] (5) the apparent intellectual and emotional state of the suspect."

*Powell* at ¶ 119, quoting *State v. Roberts*, 32 Ohio St.3d 225, 232 (1987); *State v. McZorn*, 219 S.E.2d 201, 212 (N.C. 1975).

{¶ 20}  In this case, the length of time between the reading of the warning and the first interrogation was relatively short, just about one hour.  (Tr. at 43; Defense's Ex. 1 at 00:27:46-01:26:52.)  The time before the warnings and the second statement given at the OSHP post was longer by an amount of time not exactly reflected in the record, but the second statement was still given within the same night and what appears from the record to have been within two hours of the stop.  (Tr. at 263-64.)  We note that this delay is considerably less than that which other courts in Ohio still have found to be reasonable.  *See Powell* at ¶ 120 (30 hours); *State v. Brewer*, 48 Ohio St.3d 50, 59 (1990) (approximately one day); *State v. Barnes*, 25 Ohio St.3d 203, 208 (1986) (fewer than 24 hours).

{¶ 21}  The first interrogation took place in the same place as the *Miranda* warnings, the back seat of Comstock's patrol car; it involved the same officer, Comstock.  (Defense's Ex. 1 at 00:27:46-01:41:48.)  The second interrogation (for which Cox gave a written statement) occurred at the OSHP post to which Comstock drove Cox and it involved the same officers (including a supervisor) who were present at the scene of the stop.  (Tr. at 254, 257.)  As was true in *Brewer*, the second interrogation was essentially a continuation of a series of discussions begun in Comstock's patrol car. *Brewer* at 60; State's Ex. H.

{¶ 22}  The content of what Cox said in the back of Comstock's patrol car was consistent on the essential points with the statement she handwrote at the OSHP post; in essence, the guns were hers, she threw them out the window, and Jones fled because she

asked him to. *Compare* Defense's Ex. 1 in passim *with* State's Ex. H. The statements also were consistent in what they did not admit to—possession of heroin.

{¶ 23} Finally, Comstock testified and the video evidence shows, that Cox appeared calm and collected throughout the discussion in the back of the patrol car. (Tr. at 220; Defense's Ex. 1 in passim.) Although Cox related in her oral statements in the patrol car and in her written statement, that she was "scared," that reported emotion related to her decision to throw the guns from the car, not her mental state at the time of the statement itself. (Defense's Ex. 1 at 01:33:40-01:35:08; State's Ex. H.) Cox explained that she was scared because she had all her money with her and had her guns with her. (Defense's Ex. 1 at 01:33:40-01:35:08.)

{¶ 24} Considering the five factors and the totality of the circumstances, we find that the *Miranda* warnings administered by Comstock were not stale and that the trial court did not err in refusing to exclude the statements. Cox's third assignment of error is overruled.

### 2. Second Assignment of Error – Whether the Trial Court Erred in Refusing to Suppress the Heroin Found in Cox's Purse

{¶ 25} The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and *effects*, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Emphasis added.) Effects are defined as "[m]ovable property, goods." *Black's Law Dictionary* 628 (10th Ed.2014); *see also Oxford English Dictionary* (3d Ed.2008) (see definition 7 for "effects *n.*"). The United States Supreme Court has made clear that, among other things, "effects" includes luggage (of which a purse would be considered within this classification). *United States v. Place*, 462 U.S. 696, 705-06 (1983). Absent an exception, the Fourth Amendment prohibits searching "effects" (such as a purse) without a warrant.

{¶ 26} One frequent exception to the warrant requirement, however, is that a search of an automobile's passenger compartment (and items contained in it) may be performed without a warrant when an occupant of the automobile is subjected to a lawful custodial arrest (this is often called a "search incident to arrest"). *New York v. Belton*, 453 U.S. 454 (1981). Yet the United States Supreme Court limited this exception in *Arizona v. Gant*, 556

U.S. 332 (2009), so that the right to search the passenger compartment of an automobile incident to lawful arrest of an occupant of that vehicle, expires once the occupant is secured and cannot access the interior of the vehicle. *Id.* at 335. The Supreme Court reasoned that the justifications permitting an exception to the warrant requirement (that the car may move or the arrestee may destroy evidence or seek a weapon) cease to be a danger once the occupant is securely in custody and can no longer access the vehicle. *Id.* However, officers may still search a vehicle incident to arrest when "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.*

{¶ 27} Cox argues that the prosecution has sought to justify the search of Cox's purse by relying in part upon the warrant exception for searches of vehicles incident to the arrest of an occupant. (Cox's Brief at 3-5.) Cox asserts that the search incident to arrest exception is inapplicable in this case because, as was true in *Gant*, she and Jones had already been secured before the search of the purse took place. *Id.* We agree. The evidence in this case showed unequivocally that Cox and Jones were handcuffed and secured in squad cars immediately after the stop and before any search took place. (State's Ex. E at 00:15:10-00:18:00.) Thus, that aspect of the search incident to arrest exception does not excuse the warrantless search of the purse.

{¶ 28} Because the car did not belong to Jones or Cox and was apparently going to be towed from the scene of the stop, another potentially applicable exception in this case is the "inventory search" exception. (Tr. at 57-58.) This exception allows police to search and inventory the contents of an impounded automobile in order to protect the property in it and insulate themselves from false claims, and to ensure that nothing dangerous enters their custody without being appropriately accounted for. *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). Cox argues that the purse was not searched as part of a valid inventory search because police procedures for inventory searches were not followed and that failure betrays the search's investigative nature. (Cox's Brief at 5-6.) Although Cox does not explain exactly what procedures the police failed to follow and why this undermined their legal entitlement to inventory the contents of the vehicle they were impounding, we find it unnecessary to determine whether the drugs could have been seized during a lawful inventory search of Cox's purse because there is a third consideration that applies in this case.

{¶ 29} When police have probable cause to search a car for something, they can also search containers within the car (such as a purse) if those containers could accommodate the item in question. *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *see also Gant* at 351 (authorizing a warrantless search of an automobile incident to the arrest of an occupant when it is "reasonable to believe the vehicle contains evidence of the offense of arrest"). As the State's brief notes and as review of the video confirms, Cox told Comstock that there was "weed" in the car and her purse, and another officer told Comstock that Cox had said it was in her purse. (State's Ex. E at 00:17:58-00:18:10; State's Brief at 16.) Given that admission, Comstock had probable cause to arrest Cox for drug possession and to believe there was marijuana in the car. Under *Houghton* and *Gant*, she therefore also had legally sufficient justifications to search the car and any containers therein that could contain weed, including Cox's purse.

{¶ 30} Cox's second assignment of error is overruled.

**B. First Assignment of Error – Whether Cox's Conviction was Sufficiently Supported by the Evidence and Whether it was Against the Manifest Weight of the Evidence**

{¶ 31} In her first assignment of error, Cox alleges that her convictions were not supported by sufficient evidence. Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Black's Law Dictionary* 1433 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} Cox in her first assignment of error argues that her convictions were against the manifest weight of the evidence. The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and

'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley* at ¶ 10, quoting *Thompkins* at paragraph two of the syllabus.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * * *. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594. In a manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

### 1. Possession of Heroin

{¶ 33} A person is guilty of possession of heroin as a second-degree felony if the person "knowingly" possesses at least 10 but less than 50 grams of heroin. R.C. 2925.11(A), (C)(6)(d). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct * * * will probably be of a certain nature." R.C. 2901.22(B). " 'Possess' or 'possession' means having control over a thing or substance." R.C. 2925.01(K).

{¶ 34} No party at trial disputed that heroin was found in Cox's purse in the car in which she was riding. She had possession of it. The more difficult question for the jury was whether she knowingly possessed it.

{¶ 35} Testimony of officers at trial (along with portions of the video evidence not admitted at trial) strongly suggested that Cox thought she had "weed," not heroin, in her purse. (Tr. at 185; 208-10; Defense's Ex. 1 at 01:38:40-01:41:48.) But it was undisputed that Cox was riding in a car with Jones before the stop and discovery of the heroin in her purse. Therefore, either the heroin was in her purse because she put it there or (as the defense suggested during closing) Jones planted it there during the pursuit in an attempt to hide it from the police and deflect suspicion from himself. Given that Cox admitted on video that she knew she was carrying a large amount of cash (State's Ex. E at 01:33:40-01:35:08), the jury could have inferred that she was aware of the other contents of the

purse, was lying about the "weed," and that the money was evidence of the fact that she had the means to buy (and sometimes bought) thousands of dollars' worth of heroin. If the defense theory was correct that the drugs were Jones' and that he stowed them in Cox's purse during the chase, the jury could still have inferred, given the inherent close-quarters nature of riding in a car, that Cox saw him do it, and, therefore, knowingly possessed the heroin and aided and abetted Jones' possession of heroin. R.C. 2923.03(A)(2). Or the jury could have chosen not to believe that Jones put the heroin in Cox's purse, perhaps because her instructions to Jones to get away from the police by fleeing in the car inferred some kind of guilt about what she had in the car with her.

{¶ 36} The evidence was sufficient to permit a "rational trier of fact" to find "the essential elements of the crime proven beyond a reasonable doubt," and we are unable to conclude, even acting as a "thirteenth juror," that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387-88; *Monroe* at ¶ 47.

### 2. Tampering with Evidence

{¶ 37} A person may be found guilty of tampering with evidence if, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted," the person "[a]lter[s], destroy[s], conceal[s], or remove[s] any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1). In this case, while being chased by the police at night, Cox admitted to throwing guns from the moving vehicle. (State's Ex. E at 01:34:13-01:34:42; State's Ex. H.) She did this believing that she was not carrying the guns in a legal manner. (State's Ex. E at 01:34:13-01:34:42; State's Ex. H.) Cox was correct in her belief because, for example, Ohio law prohibits the knowing transport of a loaded firearm in a motor vehicle in a manner in which the firearm is accessible to the operator or any passenger in the vehicle without leaving the vehicle. R.C. 2923.16(B).

{¶ 38} The evidence was sufficient to permit a "rational trier of fact" to find "the essential elements of the crime proven beyond a reasonable doubt." *Monroe* at ¶ 47. We are unable to conclude that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 388.

{¶ 39} Cox's first assignment of error is overruled.

## IV.  CONCLUSION

{¶ 40}  Cox was read the required *Miranda* warnings and stated that she understood her rights according to *Miranda* one or two hours before making incriminating statements. Cox also volunteered that she had contraband in her purse.  The trial court did not err in refusing to suppress her statements or the evidence recovered.  Cox essentially admitted to tampering with evidence in her attempt to dispose of the firearms.  With respect to the heroin possession charge, the jury could have reasonably inferred, based on the evidence presented at trial, that the heroin was Cox's or that she was hiding it for Jones.  In the first case, she would be guilty in her own right, and in the second, she would be guilty as an aider and abettor.  We, therefore, find that her convictions were sufficiently supported by the evidence and not contrary to the manifest weight of the evidence.  Having overruled all three of Cox's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and LUPER SCHUSTER, J., concur.

————————————